**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 10-35732 |
| ISC Building Materials, Inc., | § | |
| | § | CHAPTER 11 |
| Debtor | § | |

**DEBTOR'S MOTION TO AUTHORIZE THE DEBTOR TO OBTAIN POST-PETITION FINANCING ON AN INTERIM and FINAL BASIS AND SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C)**

Comes now, ISC Building Materials, Inc., Debtor, and shows the court as follows:

**CONCISE STATEMENT PURSUANT TO FRBP 4001(c)(1)(b)**

Debtor seeks permission to enter into a Debtor In Possession credit facility with Comerica Bank. Comerica Bank is debtor's senior secured lender pre-petition and has provided support by way of agreement to debtor's use of cash collateral since this Chapter proceeding was filed.

Comerica proposes to provide a Credit Facility in the form of a revolving loan which will provide a roll up of the existing pre-petition loans into a new revolving facility plus an additional $850,000 in available liquidity.

Debtor proposes to grant Comerica an all assets lien and superiority status, save only usual carve outs for fees, as security for the DIP Loan. The loan characteristics are summarized as follows:

| Characteristic | Effect or Rate | Location |
|---|---|---|
| INTEREST RATE | PRIME + 4% | NOTE PAGES 3-4 |
| MATURITY | DEMAND, LIMITED BY COVENANTS TO DECEMBER 31, 2010 OR UPON PLAN CONFIRMATION | CREDIT AGREEMENT P. 12 |
| EVENTS OF DEFAULT | VIOLATION OF COVENANTS, FAILURE TO MAINTAIN BORROWING BASE | CREDIT AGREEMENT IN GENERAL |
| LIENS AND CLAIMS | ALL ASSETS LIEN PER 11 U.S.C. §§ 364(C)(2) AND 364(C)(3) AND SUPERPRIORITY CLAIMS PER 11 U.S.C. §§ 364(C)(1), 503(B), AND 507(B) | CREDIT AGREEMENT PAGES 17 TO 20; LOAN TERMS, CONDITIONS, AND PROCEDURES ADDENDUM, PAGE 5 |
| BORROWING LIMITS | 85% OF ELIGIBLE A/R, 65% (DECLINING TO 60%) OF INVENTORY. | DEFINED TERMS ADDENDUM PAGES 1 TO 2 |
| BORROWING CONDITIONS | WEEKLY REPORTING, WRITTEN DRAW REQUEST, OBSERVANCE | CREDIT AGREEMENT PAGE 2 |

|  | OF ALL COVENANTS |  |
|---|---|---|

In addition, the following provisions are summarized pursuant to 4001(c)(1)(i-xi):

Will this provision survive if interim order is entered by final order is denied? ↓

| Item | Effect/Rate | Document Location | Yes/No |
|---|---|---|---|
| (i) a grant of priority or a lien on property of the estate under § 364(c) or (d) | All assets | CREDIT AGREEMENT PAGES 17 TO 20 | Yes |
| (ii) the providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim | All Prepetion claims of Comerica are paid in full. Reclamation claims of vendors are protected from Superpriority lien. | Credit Agreement Pages 3 to 4 | Yes |
| (iii) a determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim; | All claims of Comerica Bank are liquidated, and stipulated by the Debtor to be valid and enforceable; Committee provided a 75 day period to review, investigate, and challenge Comerica's liens and claims. | Credit Agreement generally; proposed Interim DIP Order | Yes |
| (v) a waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364; | Debtor is required to File a Plan by October 4, 2010 and cannot extend time without the consent of Comerica Bank. No other provisions for cash collateral use or obtaining credit may be investigated or prosecuted by Debtor without permission of | Credit Agreement Page 12 | No |

|  |  | Comercia Bank |  |  |
|---|---|---|---|---|
| (vi) the establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order; | | Plan Filing by October 4, 2010, confirmation hearing to be held by December 10, 2010, and Confirmation by December 21, 2010. | Credit Agreement Page 12 | No |
| (vii) a waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien; | | All liens are perfected by operation of law upon entry of Interim and/or Final Orders. All state law filing formalities are waived. | Credit Agreement Page 12 | Yes |
| (viii) a release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action; | | All claims for Chapter 5 causes of action held by the Debtor against Comerica Bank are waived. All claims for pre-petition breach of contract or tort against Comerica held by the debtor are waived. Specific limitations are imposed on other parties in interest respecting claims of this nature. | Credit Agreement generally, see also Credit Agreement page 18 | Yes |
| (ix) the indemnification of any entity; | | Comerica Bank is indemnified by Debtor as to all causes of action not arising out of Gross Negligence of Comerica Bank. | Credit Agreement Page 10 | Yes |
| (x) a release, waiver, or limitation of any right under § 506(c); or | | None | | Yes |
| (xi) the granting of a lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a). | | None; liens on Chapter 5 causes of action are excluded | Credit Agreement pages 17-20 | Yes |

### Jurisdiction and Venue

1.  <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over this proceeding, the parties, and property affected pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this proceeding and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  <u>Notice</u>.  The Debtor has provided notice of the Motion and the hearing (the "<u>Interim Hearing</u>") to all creditors and other parties in interest entitled to such notice pursuant to Rules 2002, 4001(c), 9006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and as required by Sections 102, 361, 362, 363, and 364 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

### Background Facts

3.  <u>Filing of the Petition</u>.  On July 6, 2010 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor is currently operating its business and managing its properties as debtor-in-possession pursuant to Sections 1101, 1107(a) and 1108 of the Bankruptcy Code.  On July 14, 2010, the Office of the United States Trustee appointed an official committee of unsecured creditors (the

"Committee").  No request has been made for the appointment of a trustee or examiner.

4. Cash Collateral Order. On July 9, 2010, this Court entered the Interim Order for Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and Providing Partial Adequate Protection and Granting Liens and Security Interests (the "Cash Collateral Order"). Pursuant to a Stipulation of the parties, the Debtor's use of cash collateral was extended beyond the initial interim authority but will expire on August 6, 2010 at midnight.

5. Comerica Bank has not consented to further use of cash collateral beyond any reasonable extension necessary for the scheduling of this Motion on an emergency basis, but it has indicated that it is willing to provide post-petition financing to facilitate the Debtor's efforts to reorganize.

6. The Pre-Petition Indebtedness. Pursuant to the Amended and Restated Credit Agreement (the "Pre-Petition Revolving Credit Agreement") dated March 7, 2005 between the Debtor and Comerica Bank (the "Pre-Petition Lender"), the Pre-Petition Lender made certain loans to the Debtor to, *inter alia*, fund the Debtor's operations.

The Post-Petition Financing.

7.      The Debtor asserts that an immediate and critical need exists to obtain funds in order to purchase inventory, meet demand, and continue the operation of its business.

8.      The Debtor asserts that cash collateral usage is not sufficient to maintain its post-petition operations as the company is currently configured..

9.      Without obtaining post-petition funding, the Debtor asserts that it will not be able to pay its post-petition payroll and other direct operating expenses, nor will it be able to obtain goods and perform services needed to carry on its business in a manner that will avoid irreparable harm to the Debtor's estate.

10.     Without additional liquidity, the debtor will be forced to close facilities, reduce sales force, and significantly impact the ability of the debtor to reorganize and pay a dividend to unsecured creditors.

11.     The Debtor is unable to obtain the required funds in the form of unsecured credit or unsecured debt allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to Section 364(a) or (b) of the Bankruptcy Code, or unsecured debt having the priority afforded by Section 364(c)(1).

12. Debtor's vendors have been canvassed and have indicated unwillingness to extend ordinary trade terms to the debtor unless a DIP lender is willing to provide significant liquidity first.

13. Debtor has solicited involvement of competing lenders without success. Specifically, Debtor has met with GE Capital, Frost Bank and Wells Fargo for the purpose of obtaining DIP financing. All three have declined to provide DIP financing. Debtor has canvassed several other potential lenders whose rates, or terms, would be onerous in relation to the gross margins available to Debtor in this industry segment.

14. The Debtor asserts that its ability to obtain post-petition funding is necessary to preserve and maintain the going concern value of the Debtor's estate. Specifically, the Debtor's stated strategy upon entering this Chapter proceeding was to engage an Investment Banking firm for the purpose of marketing a recapitalization of the company. The Debtor's choice for such an engagement is Gulfstar Group, LLC of Houston. Gulfstar has indicated that it would decline engagement if a sufficient DIP loan is not obtained by the Debtor.

15. Substantially all of the Debtor's assets are subject to the Pre-Petition Liens. The Pre-Petition Lender has objected to the use of the Pre-

Petition Collateral by the Debtor, including cash collateral (as defined in 11 U.S.C. § 363), except on this Interim Order's terms.

16. The Pre-Petition Lender has indicated a willingness to consent and agree to the Debtor entering into the financing arrangements contemplated by this Interim Order, and Comerica Bank (the "<u>Post-Petition Lender</u>") is willing to provide the additional financing contemplated herein, all subject to the conditions set forth herein and in the other DIP Financing Documents (as hereinafter defined) and the provisions of this Interim Order assuring that the Post-Petition Liens (as hereinafter defined) and the various claims, superpriority claims and other protections granted pursuant to this Interim Order and the other DIP Financing Documents will not be affected by any subsequent reversal or modification of this Interim Order or any other order, as provided in Section 364(e) of the Bankruptcy Code.

17. The Post-Petition Lender has acted in good faith in consenting to and in agreeing to provide the post-petition financing provided for in this Interim Order and the other DIP Financing Documents.

18. The post-petition loan provides that the Pre-Petition Indebtedness will be rolled into a post-petition revolving credit facility (the "<u>DIP Facility</u>") with additional availability of $850,000 (the "<u>DIP Commitment</u>"). On the Effective Date (hereafter defined) of the DIP Facility,

all Pre-Petition Indebtedness will be paid by an advance under the DIP Facility. The DIP Facility will be approximately **$6,115,974.18** which will include an increase in advance rates to provide the Debtor with additional working capital. The DIP Facility and all obligations owing thereunder (the "DIP Obligations") will be governed by the terms of a post-petition credit agreement (the "Post-Petition Credit Agreement"), a copy of which is attached hereto as **Exhibit A.** Advances under the DIP Facility ("DIP Advances") will be made in accordance with the Budget (hereafter defined) and the terms of the Post-Petition Credit Agreement.

19. The financing and adequate protection arrangements authorized hereunder have been negotiated in good faith and at arm's length among the Debtor and the Pre-Petition Lender and Post-Petition Lender. The terms of such financing and adequate protection arrangements are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration.

20. The Debtor requests entry of an Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). The Order attached hereto as Exhibit contains additional agreed findings of fact which the Debtor submits to the Court for approval.

WHEREFORE, Debtor prays that this Court enter an order in the form of Exhibit attached hereto, authorizing Debtor to obtain credit authorizing the use of Cash Collateral and authorizing the granting of security interests and other relief upon the terms and conditions set forth therein*;* and for such other and further relief as is just.

Dated:  August 6, 2010.

Respectfully submitted,

Wyatt Legal Services, LLP

 /s/Don Wyatt_____
Donald L. Wyatt
SBA No. 24039262
26418 Oak Ridge Dr.
The Woodlands, Texas 77380
281-419-8733 Phone
281-419-8703 Fax
don.wyatt@wyattpllc.com