**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 10-35732** |
| **ISC BUILDING MATERIALS, INC.,** | § | |
| | § | **CHAPTER 11** |
| **DEBTOR.** | § | |

**INTERIM ORDER AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION
FINANCING AND SCHEDULING A FINAL HEARING PURSUANT TO
BANKRUPTCY RULE 4001(C)**

Upon the motion of ISC Building Materials, Inc. (the "Debtor") for interim and final orders authorizing the Debtor to Obtain Post-Petition Financing and Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(C) (the "Motion"), the Court, having considered the arguments of counsel and based on the representations of the parties, finds that:

A.      Jurisdiction and Venue.  This Court has jurisdiction over this proceeding, the parties, and property affected pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this proceeding and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Notice.  Under the circumstances, the Debtor has provided sufficient and adequate notice of the Motion and the hearing (the "Interim Hearing") to all creditors and other parties in interest entitled to such notice pursuant to Rules 2002, 4001(c), 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and as required by Sections 102, 361, 362, 363, and 364 of title 11 of the United States Code (the "Bankruptcy Code").  Other than the notice provided for by this interim order approving the Motion (the "Interim Order"), no further notice of the Motion or the entry of this Interim Order is necessary or required.

C.      Filing of the Petition.  On July 6, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor is currently operating its business and managing its properties as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  On July 14, 2010, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee").  No request has been made for the appointment of a trustee or examiner.

D.      Cash Collateral Order.  On July 9, 2010, this Court entered the Interim Order for Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and Providing Partial Adequate Protection and Granting Liens and Security Interests (the "Cash Collateral Order").  Pursuant to stipulations of the parties filed with this Court, the Debtor's use of cash collateral was extended beyond the initial interim authority and expired on August 20, 2010 at midnight.  The Pre-Petition Lender (defined below) has not consented to further use of cash collateral beyond August 20, 2010, but it has indicated that it is willing to provide post-petition financing to facilitate the Debtor's efforts to reorganize.

E.      The Pre-Petition Indebtedness.  Pursuant to the Amended and Restated Credit Agreement (the "Pre-Petition Revolving Credit Agreement") dated March 7, 2005 between the Debtor and Comerica Bank (the "Pre-Petition Lender"), the Pre-Petition Lender made certain loans to the Debtor to, *inter alia*, fund the Debtor's operations.

F.      Stipulations Regarding Pre-Petition Indebtedness.  The Debtor admits that as of the Petition Date the aggregate amount of approximately $5,265,974.18 was outstanding in respect of: (i) loans made by the Pre-Petition Lender t*o the Debt*or pursuant to the Pre-Petition Credit Agreement, plus interest thereon and fees and expenses incurred in connection therewith as provided in the Pre-Petition Credit Agreement and all related documents; (ii) amounts in

respect to drawn letters of credit that were issued pursuant to the Pre-Petition Credit Agreement plus interest thereon and fees and expenses incurred in connection therewith; (iii) obligations under interest rate swap transactions conducted pursuant to the Pre-Petition Credit Agreement plus applicable fees and expenses; and (iv) obligations for credit cards issued to the Debtor by the Pre-Petition Lender, plus applicable interest, fees and expenses incurred in connection therewith (collectively, the "Pre-Petition Indebtedness").  The Debtor acknowledges and agrees that the Pre-Petition Indebtedness constitutes legal, valid, binding, and enforceable obligations of the Debtor, and that no offsets, defenses or counterclaims to the Pre-Petition Indebtedness exist, and no portion of the Pre-Petition Indebtedness is subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law

G.     Stipulations Regarding Pre-Petition Liens.     To secure the Pre-Petition Indebtedness, the Debtor granted to the Pre-Petition Lender, pursuant to various security agreements, liens and security interests in substantially all of the Debtor's personal property and real property, wherever located, then owned or thereafter acquired or arising, and the proceeds, products, rents and profits of all of the foregoing (all of the foregoing collateral generally described above shall be referred to herein as the "Pre-Petition Collateral," and such liens shall be referred to herein as the "Pre-Petition Liens").  The Debtor admits that the Pre-Petition Liens constitute valid, binding, enforceable and perfected first priority liens that are not subject to avoidance or subordination (except insofar as such liens are subordinated to certain liens permitted by the Pre-Petition Credit Agreement that are valid, binding, enforceable and in existence on the Petition Date).

H.     The Post-Petition Financing.

(i)      The Debtor asserts that an immediate and critical need exists to obtain funds in order to purchase inventory, meet demand, and continue the operation of its business.   The Debtor asserts that cash collateral usage is not sufficient to maintain its post-petition operations as the company is currently configured.   Without obtaining post-petition funding, the Debtor asserts that it will not be able to pay its post-petition payroll and other direct operating expenses, nor will it be able to obtain goods and perform services needed to carry on its business in a manner that will avoid irreparable harm to the Debtor's estate. Without additional liquidity, the debtor will be forced to close facilities, reduce sales force, and significantly impact the ability of the debtor to reorganize and pay a dividend to unsecured creditors.

(ii)      The Debtor is unable to obtain the required funds in the form of unsecured credit or unsecured debt allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to Section 364(a) or (b) of the Bankruptcy Code, or unsecured debt having the priority afforded by Section 364(c)(1).   Debtor's vendors have been canvassed and have indicated unwillingness to extend ordinary trade terms to the debtor unless a DIP lender is willing to provide significant liquidity first.

(iii)      The Debtor asserts that its ability to obtain post-petition funding is necessary to preserve and maintain the going concern value of the Debtor's estate.   Specifically, the Debtor's stated strategy upon entering this Chapter proceeding was to engage an Investment Banking firm for the purpose of marketing a recapitalization of the company.   The Debtor's choice for such an engagement is Gulfstar Group, LLC of Houston.   Gulfstar has indicated that it would decline engagement if a sufficient DIP loan is not obtained by the Debtor.

(iv)     Substantially all of the Debtor's assets are subject to the Pre-Petition Liens.  The Pre-Petition Lender has objected to the use of the Pre-Petition Collateral by the Debtor, including cash collateral (as defined in 11 U.S.C. § 363), except on this Interim Order's terms.

(v)     The Pre-Petition Lender has indicated a willingness to consent and agree to the Debtor entering into the financing arrangements contemplated by this Interim Order, and Comerica Bank (the "Post-Petition Lender") is willing to provide the additional financing contemplated herein, all subject to the conditions set forth herein and in the other DIP Financing Documents (as hereinafter defined) and the provisions of this Interim Order assuring that the Post-Petition Liens (as hereinafter defined) and the various claims, superpriority claims and other protections granted pursuant to this Interim Order and the other DIP Financing Documents will not be affected by any subsequent reversal or modification of this Interim Order or any other order, as provided in Section 364(e) of the Bankruptcy Code.  The Post-Petition Lender has acted in good faith in consenting to and in agreeing to provide the post-petition financing provided for in this Interim Order and the other DIP Financing Documents.

(vi)     The post-petition loan provides that the Pre-Petition Indebtedness will be rolled into a post-petition revolving credit facility (the "DIP Facility") with additional availability of $850,000 (the "DIP Commitment").   On the Effective Date (hereafter defined) of the DIP Facility, all Pre-Petition Indebtedness will be paid by an advance under the DIP Facility.  The DIP Facility will be the lesser of approximately $6,115,974.18 and the borrowing base, which will include an increase in advance rates to provide the Debtor with additional working capital. The DIP Facility and all obligations owing thereunder (the "DIP Obligations") will be governed by the terms of a post-petition credit agreement (the "Post-Petition Credit Agreement"), a copy of which is attached hereto as **Exhibit A.**  Advances under the DIP Facility ("DIP Advances") will

be made in accordance with the Budget (hereafter defined) and the terms of the Post-Petition Credit Agreement.

I.      Notice.  Notice of the interim hearing on the Motion was provided (by hand deliver, telecopy, overnight mail, e-mail, or courier) to Chris Adams, counsel for the Official Committee of Unsecured Creditors, the US Trustee, the twenty (20) largest unsecured creditors, counsel to the Pre-Petition Lender and Post-Petition Lender, and all parties having requested notice in this matter.   The notice of the Interim Hearing and the entry of the Interim Order (as defined below) constitutes sufficient notice under Bankruptcy Rule 4001.

J.      Good Cause; Best Interest.

(i)      Good cause has been shown for the entry of this Interim Order.  Without continued funding on a long-term basis the Debtor will be unable to fund ongoing business operations.  Granting approval of the financing provided herein will provide the Debtor with sufficient working capital and liquidity to pursue and maximize the value of the Debtor's estate and reorganize its business.

(ii)      The financing and adequate protection arrangements authorized hereunder have been negotiated in good faith and at arm's length among the Debtor and the Pre-Petition Lender and Post-Petition Lender.  The terms of such financing and adequate protection arrangements are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration.  As such, the Debtor and the Pre-Petition Lender and Post-Petition Lender are entitled to the protection provided by Section 364(e) of the Bankruptcy Code.

(iii)      The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  This Court concludes that entry of this Interim Order is in the Debtor's

best interest and its estate and creditors as its implementation will, among other things, allow for the continued operation and rehabilitation of the Debtor's existing business.

K.      <u>No Liability to Third Parties</u>. The Debtor stipulates and the Court finds that in making decisions to advance loans to the Debtor, in administering any loans, in permitting the Debtor to use cash proceeds from such loans, in accepting the Budget or any future Budget or in taking any other actions permitted by this Interim Order or the DIP Financing Documents, the Post-Petition Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator"`' with respect to the operation or management of the Debtor.

Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefore,

IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.      <u>Approval of Interim Order</u>.  The Motion is approved on the terms and conditions set forth in this Interim Order.

2.      <u>Approval of DIP Financing Documents; Authority</u>.  The Debtor is authorized on an interim basis to enter into the Post-Petition Credit Agreement dated as of August 24, 2010 and, together with all related agreements, documents and instruments, including the Budget, and this Interim Order, the "<u>DIP Financing Documents</u>") and to borrow money and perform its obligations hereunder and thereunder in accordance with, and subject to, the terms of this Interim Order and the other DIP Financing Documents.  Upon execution and delivery of the DIP Financing Documents, the DIP Financing Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms. Notwithstanding any other provision of this Interim Order, the Post-Petition Lender shall not

have any obligations or commitments under the DIP Financing Documents, or this Interim Order until the conditions precedent provided for in the Post-Petition Credit Agreement have been satisfied.

3.       Payment of Pre-Petition Indebtedness.  Pursuant to the terms of the DIP Financing Documents, on the Effective Date (as defined in the Post-Petition Credit Agreement) the Pre-Petition Indebtedness will be rolled into a post-petition revolving credit facility (the "DIP Facility") with additional availability of $850,000 (the "DIP Commitment").  On the Effective Date of the DIP Facility, all Pre-Petition Indebtedness will be paid by an advance under the DIP Facility.

4.       Interest on DIP Facility.  As more specifically set forth in the Post-Petition Credit Agreement, the rate of interest to be charged for the DIP Facility shall be a base rate of prime plus 4% (the "Rate").  Interest shall be paid monthly.  After an Event of Default (hereafter defined), the Rate shall be the pre-default rate plus 3% (the "Default Rate").

5.       Payment of DIP Facility Fees and Expenses.  A facility fee of 1/4% (one-quarter percent) of the DIP Commitment shall be deemed fully earned and payable as of the effective date of the DIP Facility (the "Effective Date").  The Post-Petition Lender shall be entitled to reimbursement of its reasonable out-of-pocket expenses, including professional fees and expenses incurred.  Such advances shall constitute DIP Obligations but shall be in addition to, and not count against, the DIP Commitment.  The Pre-Petition Lender and Post-Petition Lender shall also be entitled to reimbursement of any outstanding reasonable fees and expenses of professionals retained by the Pre-Petition Lender and Post-Petition Lender for services performed up to and including the Effective Date.  None of such fees, costs, expenses, or other

amounts shall be subject to Court approval, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.

6.      <u>Validity of DIP Financing Documents</u>. Upon execution and delivery of the DIP Financing Documents, the DIP Financing Documents shall constitute, and are hereby deemed to be the legal, valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of the DIP Financing Documents.

7.      <u>DIP Liens</u>.  As security for the DIP Facility, pursuant to section 364(c)(2) of the Bankruptcy Code, the Post-Petition Lender is hereby granted (effective upon the date of this Interim Order, without the necessity of the execution by the Debtor or the filing or recordation of security agreements, financing statements, or any other instruments or otherwise) valid, binding, enforceable, and perfected first priority liens and security interests in and against all present and after-acquired property of the Debtor of any nature whatsoever, including, without limitation, all cash and cash equivalents contained in any account maintained by the Debtor (collectively with all the proceeds and products of any or all of the foregoing, the "<u>Post-Petition Collateral</u>").  The Post-Petition Collateral shall exclude the Carve-Out (hereafter defined) and causes of action under Chapter 5 of the Bankruptcy Code.

8.      <u>Superpriority Administrative Claims</u>.  The Post-Petition Lender shall have an allowed super-priority administrative expense claim in accordance with the provisions of Section 364(c)(1) of the Bankruptcy Code over all administrative expenses of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code (the "<u>Superpriority Claims</u>").  The Superpriority Claims shall be subject to a carve-out (the "<u>Carve-Out</u>") for: (i) any allowed and unpaid administrative claim of Debtor's counsel not to exceed $75,000; (ii) any allowed and unpaid administrative claim of Committee's counsel not be exceed $75,000; and (iii) unpaid fees

payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6).  No amount included in the Carve-Out may be incurred by any professional directly or indirectly, in respect of, arising from or relating to, the investigation or prosecution of objection to or contest in any manner, or in raising any defenses to, the validity, extent, perfection, or enforceability of the Pre-Petition Indebtedness, the Pre-Petition Liens, the DIP Liens, or the DIP Obligations.  Notwithstanding anything to the contrary herein, while the DIP Liens shall not extend to Chapter 5 causes of action, the proceeds of Chapter 5 causes of action shall be subject to the Superpriority Claims; provided, however, that proceeds of Chapter 5 causes of action shall be split evenly between the Post-Petition Lender and the general unsecured creditors until the Post-Petition Lender's superpriority administrative expense claim is satisfied in full.  Furthermore, the Post-Petition Lender's superpriority administrative expense claim shall not extend to any portion of Pre-Petition Indebtedness that is avoided (or found to be unsecured or unperfected because of a defect in the liens securing the Pre-Petition Indebtedness) pursuant to a ruling from this Court in a timely filed adversary proceeding, objection, or other contested matter brought by the Committee under paragraph 17 of this Interim Order.

9.    <u>DIP Operating Account and DIP Collections Account</u>.  During the pendency of its bankruptcy case, the Debtor shall maintain a debtor-in-possession collections account (Comerica Acct. #xxxxx2943) (the "<u>DIP Collections Account</u>") and a debtor-in-possession operating account (Comerica Acct. #xxxxxx3194) (the "<u>DIP Operating Account</u>").  All of the Debtor's cash, accounts receivable, trade acceptance and all proceeds of Post-Petition Collateral shall be deposited in the DIP Collections Account not later than the business day following receipt by the Debtor of such cash, accounts receivable, trade acceptance and all proceeds of Post-Petition Collateral.  In accordance with the terms of the Post-Petition Credit Agreement, on the close of

each business day, the Post-Petition Lender shall apply the collected balance in the DIP Collections Account (to the extent of such balance) to the outstanding DIP Obligations.  Upon the Post-Petition Lender's approval of a Request for Advance (as defined in the Post-Petition Credit Agreement), the Post-Petition Lender shall transfer funds in the amount of the Request for Advance from the DIP Collections Account to the DIP Operating Account.  The Debtor shall thereafter pay operating expenses from the DIP Operating Account.  Notwithstanding the above, the Debtor is permitted to maintain: (i) Bank of America Account # xxxxxx____ for petty cash, the balance of which shall not exceed $3000 at any given time; and (ii) Comerica Payroll Account # xxxxxx2387, which shall be a zero balance account.

10.    <u>Advances from DIP Facility</u>.

a.    The Debtor is hereby authorized to use advances from the DIP Facility (the "<u>DIP Advances</u>") strictly in accordance with the terms of this Interim Order and shall be limited to the actual and necessary expenditures during the Interim Period (hereafter defined) and identified in the Budget attached hereto as **Exhibit B**  (the "<u>Budget</u>").  Absent prior written approval of the Post-Petition Lender, the Debtor shall not incur expenses that exceed those amounts set forth in the Budget, subject to the Permitted Variance (as hereafter defined).  The Debtor's compliance with the Budget shall be reviewed weekly and the Debtor must comply with the Budget such that the Debtor's actual disbursements from and after the Petition Date do not exceed the aggregate amount of all budgeted disbursements by more than ten percent (10%) (the "Permitted Variance").

b.    Other than payroll, the Debtor shall not make any payments to or for the benefit of any insider (as that term is defined in 11 U.S.C. § 101(31)) of the Debtor.  Nor is the Debtor permitted to carry over any excess of budgeted costs in one line item on the Budget to any shortage of budgeted costs on any other line item, or from one month on the Budget to any subsequent month, without Comerica's prior written consent.  Provided, however, that interim disbursements against allowed fees for counsel may be made by Debtor pursuant to the Bankruptcy Code, Federal Rules of Bankruptcy Procedure and any Administrative order of this court thereon in amounts not to exceed the total budgeted amount, cumulated, during any billing period.  Any amount not paid timely pursuant to the budget shall be payable out of the allocation for fees during the following budget period until paid in full.

> c.    The Debtor is authorized to use DIP Advances to pay U.S. Trustee fees incurred during the pendency of its Chapter 11 bankruptcy case whether or not such expense is listed on the Budget.

11.    <u>Financial Reporting</u>.    The Debtor shall provide the Post-Petition Lender with financial and other reporting described in the DIP Financing Documents.

12.    <u>Affirmative Covenants in DIP Financing Documents</u>.    The Debtor shall be bound by certain affirmative covenants described in the DIP Financing Documents.   The requirements that: (i) a plan of reorganization and related disclosure statement be filed on or before October 4, 2010; (ii) a plan of reorganization be confirmed on or before December 10, 2010; and (iii) the effective date of the plan of reorganization be on or before December 21, 2010 shall not be binding on the Debtor under the terms of this Interim Order, but rather will be reserved for consideration by this Court at the Final Hearing.

13.    <u>Access to Information and Collateral</u>.    On 48 hours prior notice (written or via e-mail), the Debtor shall permit representatives, agents, and/or employees of the Post-Petition Lender to visit, inspect, have reasonable access to and consult with, as the case may be: (a) the Debtor's books and records; (b) the personnel and/or agents of the Debtor who are familiar with the Debtor's books and records or the information set forth therein; and (c) such other information as the Post-Petition Lender may reasonably request.    The Debtor and its representatives, agents, and/or employees shall cooperate and consult with, and provide to such representatives, agents, and/or employees of the Post-Petition Lender all such information as it may reasonably request.

14.    <u>Defaults Under the Interim Order</u>.    Unless specifically waived in writing by the Post-Petition Lender or cured within five (5) business days following the Post-Petition Lender's delivery of a notice (via e-mail or facsimile) of a breach by the Debtor of any obligations under

the DIP Financing Documents (the "Grace Period"), the Debtor's right and authority to use DIP Advances shall immediately terminate upon the occurrence of any of the following (each, an "Event of Default"):

a. The failure to pay required payments of principal, interest or other amounts, or a violation of terms of the DIP Financing Documents;

b. The failure of the Debtor to obtain entry of a final order on the Motion (the "Final Order") by the Bankruptcy Court in a form reasonably acceptable to the Post-Petition Lender no later than 90 days after the petition date, unless such date is extended by agreement with the Post-Petition Lender;

c. The Debtor shall file a pleading seeking to vacate or modify this Interim Order, or the Final Order, over the objection of the Post-Petition Lender;

d. The Debtor shall institute any proceeding or investigation to challenge the status and/or validity of the Pre-Petition Indebtedness or the Pre-Petition Liens of the Pre-Petition Lender;

e. The Debtor shall institute any proceeding or investigation which challenges the status and/or validity of the DIP Financing Documents, the Post-Petition Liens or the claims of the Post-Petition Lender under the DIP Financing Documents;

f. A chapter 11 plan of reorganization with respect to the Debtor is filed, and such plan does not provide for the indefeasible payment in full in cash of the DIP Facility on or prior to the effective date of such plan, with such indefeasible payment in full being in accordance with the Post-Petition Lender's rights under the Bankruptcy Code, the DIP Financing Documents and the Final Order;

g. The entry of an order amending, supplementing, staying, vacating or otherwise modifying the DIP Financing Documents, the Interim Order, the Final Order or the Cash Collateral order, in each case without the written consent of the Post-Petition Lender, or the filing of a motion for reconsideration with respect thereto;

h. The Debtor using DIP Advances for any purpose other than those set forth in the Budget or as otherwise approved by the Bankruptcy Court;

i. Permitted Variances under the Budget are exceeded for any period of time;

j.      Dismissal or conversion of the Debtor's bankruptcy case to a case under chapter 7 of the Bankruptcy Code;

k.      Modification of the automatic stay to permit foreclosure (or similar relief) of assets of the Debtor encumbered by the liens of the Post-Petition Lender.

l.      Any judgments are entered with respect to any post-petition liabilities against the Debtor in an aggregate amount in excess of $1,000,000, unless stayed;

m.      the Debtor fails to comply with any financial covenants under the DIP Financing Documents;

n.      Unless consented to by the Post-Petition Lender, entry by the Bankruptcy Court of an order pursuant to Section 363 or 365 of the Bankruptcy Code authorizing the sale or assignment of all or substantially all of the Debtor's assets, to the extent that such sale fails to provide for the termination of the DIP Facility and for the payment in full of the DIP Facility on or prior to the date of consummation thereof;

o.      Appointment of a chapter 11 trustee, or an examiner with expanded powers, without the Post-Petition Lender's consent; and

p.      The occurrence or existence of any other Event of Default as set forth in the Post-Petition Credit Agreement.

15.     <u>Termination of the Interim Order</u>.  The Debtor' right to obtain DIP Advances and use the proceeds thereof or any cash in the DIP Account shall expire on the earlier of: (a) midnight on Monday, September 20, 2010 (the "<u>Termination Date</u>"); (b) an Event of Default; (c) the Final Hearing; or (d) further order of the Court.

16.     <u>Notices to Counsel</u>.  Delivery of notices under this Interim Order to counsel for the Debtor shall be made to Donald L. Wyatt at address:  don.wyatt@wlspro.com, to counsel for the Pre-Petition Lender and Post-Petition Lender to J. Frasher Murphy, at address: fmurphy@winstead.com, and Gregory M. Zarin, at address:  gzarin@winstead.com, and to counsel for the Committee to Christopher Adams at address: cadams@oakllp.com.

17.     <u>Investigation Period for Non-Debtor Parties</u>.     The findings and all other provisions of this Interim Order shall be binding upon the Debtor immediately.  The findings and all other provisions of this Order shall be binding upon all other parties in interest without defense, claim, or counterclaim of any kind, including without limitation, the Committee, or such other statutory committee, unless: (a) a party in interest (including the Committee and any other statutory committee appointed in this Chapter 11 Case) has filed an adversary proceeding, objection, or other contested matter (subject to the limitation set forth below) challenging the amount, validity, enforceability, perfection, priority, or unavoidability as to the Pre-Petition Indebtedness or the Pre-Petition Liens in respect thereof, or otherwise asserting any claims or causes of action against the Pre-Petition Lender on behalf of the Debtor's estate no later than that date that is seventy-five (75) days after the entry of this Interim Order (the "<u>Investigation Period</u>") with respect to any challenge relating to the Pre-Petition Indebtedness or the Pre-Petition Liens, or otherwise relating to any claims or causes of action against the Pre-Petition Lender; and (b) the Court rules in favor of the plaintiff in any such timely filed adversary proceeding, objection, or other contested matter and such ruling becomes a final order.  If no such adversary proceeding, objection, or other contested matter is commenced during the Investigation Period, the provisions of this Interim Order shall be binding upon all other parties in interest without defense, claim, or counterclaim of any kind, including without limitation, any statutory committees appointed in the Chapter 11 Case, and any trustee subsequently appointed in the Chapter 11 Cases, or in the event of a conversion of this case to a case under Chapter 7, upon any Chapter 7 Trustee, and:  (a) the repayment of the Pre-Petition Indebtedness shall be deemed final and indefeasible, not subject to subordination and otherwise unavoidable, and not subject to defense, counterclaim, or offset of any kind; (b) the Pre-Petition Indebtedness shall

constitute allowed claims, not subject to subordination and otherwise unavoidable, for all purposes in the Debtors' bankruptcy cases and any subsequent chapter 7 case; (c) the Pre-Petition Liens shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable; and (d) the Pre-Petition Lender, the Pre-Petition Indebtedness, the Pre-Petition Credit Agreement and related documents, and the Pre-Petition Liens shall not be subject to challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including without limitation, any successors thereto.  The Investigation Period may be extended by agreement upon prior written approval of Comerica.

18.     _Asset Dispositions_.  The Debtor shall immediately pay, or cause to be paid, to the Post-Petition Lender for application to the outstanding indebtedness under the DIP Facility, all of the proceeds of any sale, lease, or other disposition of any Post-Petition Collateral outside the ordinary course of business (an "_Asset Disposition_").  The rights of the Post-Petition Lender to credit bid all or any portion of the indebtedness under the DIP Facility in connection with any proposed Asset Disposition shall be preserved through the closing of such sale.  All proceeds of an Asset Disposition shall be applied in accordance with the terms and conditions of the DIP Financing Documents.

19.     _Further Assurances_.  The Debtor shall execute and deliver to the Post-Petition Lender all such agreements, financing statements, instruments, and other documents as the Post-Petition Lender may reasonably request to evidence, confirm, validate or perfect the DIP Liens granted herein.  Further, the Debtor is authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents, and shall pay fees and expenses that may be required or necessary for the Debtor's performance under the DIP Financing Documents, including, without limitation, (i) the execution of the DIP Financing Documents and (ii) the

payment of the fees, costs and other expenses described in the DIP Financing Documents as such become due.  None of the reasonable attorneys' fees or other professional fees incurred by the Post-Petition Lender and reimbursable by the Debtor shall be subject to the approval of this Court or the U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.  In addition, the Debtor is hereby authorized and directed to indemnify the Post-Petition Lender against any liability arising in connection with the DIP Financing Documents to the extent provided therein.  All such fees, expenses, and indemnities of the Post-Petition Lender shall constitute DIP Obligations and shall be secured by the DIP Liens and afforded all of the priorities and protections provided hereunder.

20.    506(c) Waiver.  None of the Pre-Petition Collateral, Post-Petition Collateral, the Pre-Petition Lender, or the Post-Petition Lender shall be subject to: (*a*) surcharge pursuant to Section 506(c) or section 105(a) of the Bankruptcy Code, or otherwise, by the Debtor or any other party in interest; or (*b*) the equitable doctrine of marshalling.  Notwithstanding the survival language in paragraph 25 of this Interim Order, the provisions of this paragraph 20 shall not be binding on any Chapter 7 trustee or Chapter 11 trustee appointed in this case.

21.    Restrictions on Granting Post-Petition Liens.  Except as expressly permitted by the DIP Financing Documents, the Debtor shall not, at any time during this Chapter 11 case, grant mortgages, security interests or liens in the Post-Petition Collateral to any other parties pursuant to Section 364(d) of the Bankruptcy Code or otherwise.

22.    Automatic Effectiveness of Liens. The DIP Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtor, the Post-

Petition Lender, and without the necessity of execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, mortgages, or other documents or the taking of any other actions.  All Post-Petition Collateral shall be free and clear of other liens, claims and encumbrances, except as provided in the DIP Financing Documents and this Interim Order.  If the Post-Petition Lender hereafter requests that the Debtor execute and deliver to the Post-Petition Lender financing statements, security agreements, mortgages, or other instruments and documents considered by the Post-Petition Lender to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens, the Debtors are hereby authorized and directed to execute and deliver such financing statements, security agreements, mortgages, instruments, and documents, and the Post-Petition Lender is hereby authorized to file or record such documents in its discretion without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

23.   <u>Automatic Stay</u>. As provided herein, subject only to the provisions of the DIP Financing Documents and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Post-Petition Lender to exercise, upon the occurrence and during the continuance of any Event of Default, all rights and remedies provided for in the DIP Financing Documents, and to take any or all of the following actions, so long as the Post-Petition Lender has provided five (5) business days prior written notice to the Debtor, it's bankruptcy counsel, counsel to the Committee, and the U.S. Trustee: (a) immediately terminate the Debtor's use of cash and cease making any DIP Advances to the Debtors; (b) declare all DIP Obligations to be immediately due and payable; (c) charge the default rate of interest provided for under the DIP Financing

Documents; (d) freeze monies or balances in the Debtor's accounts; (e) immediately set off any and all amounts in accounts maintained by the Debtor with the Post-Petition Lender against the, or otherwise enforce rights against the Post-Petition Collateral in the possession of the Post-Petition Lender for application towards the DIP Obligations; and (f) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Financing Documents Facility or applicable law to effect the repayment of the DIP Obligations.  Following the giving of written notice by the Post-Petition Lender of the occurrence of an Event of Default, the Debtor and any Committee in the Debtor's Chapter 11 Case shall be entitled to an emergency hearing before this court.  Upon entry of this Interim Order, no party-in-interest shall have the right to contest the enforcement of the remedies set forth in this Interim Order and the DIP Financing Documents on any basis other than an assertion that no Event of Default has occurred, and, except with respect to such an assertion, no party-in-interest shall have the right to enjoin any such enforcement under section 105 of the Bankruptcy Code or otherwise, or to seek any injunctive relief inconsistent with the provisions of this Interim Order or the DIP Financing Documents.  The rights and remedies of the Post-Petition Lender specified herein are cumulative and not exclusive of any rights or remedies that the Post-Petition Lender may have under the DIP Facility Documents or otherwise.  This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

24.    <u>Binding Effect</u>. The provisions of this Interim Order shall be binding upon and inure to the benefit of the Pre-Petition Lender, the Post-Petition Lender, the Debtor, the Committee, and their respective successors and assigns (including any chapter 7 or chapter 11

trustee hereinafter appointed or elected for the Debtor's estate, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the Debtor's estate). To the extent permitted by applicable law, this Interim Order shall bind any trustee hereafter appointed for the Debtor's estate, whether in this Chapter 11 Cases or in the event of the conversion of the Debtor's Chapter 11 Case to a liquidation under chapter 7 of the Bankruptcy Code.

25.     <u>Survival</u>. The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization in the Debtor's Chapter 11 Case (and, to the extent not satisfied in full in cash, the DIP Obligations shall not be discharged by the entry of any such order, pursuant to section 1141(d)(4) of the Bankruptcy Code); (ii) converting the Debtor's Chapter 11 Case to a chapter 7 case; or (iii) dismissing the Debtor's Chapter 11 Case.

26.     <u>Modifications of DIP Financing Documents</u>. The Debtor and the Post-Petition Lender are hereby authorized to implement, in accordance with the terms of the DIP Financing Documents, any non-material modifications of the DIP Financing Documents without further Order of this Court, or any other modifications to the DIP Financing Documents; provided, however, that notice of any material modification or amendment to the DIP Financing Documents shall be provided to counsel to the Committee and to the U.S. Trustee, each of whom shall have five (5) days from the date of such notice within which to object in writing to such modification or amendment.  If the Committee or the U.S. Trustee timely objects to any material modification or amendment to the DIP Financing Documents, such modification or amendment shall only be permitted pursuant to an order of this Court.

27.    <u>Restriction on Use of Post-Petition Lender's Funds</u>.  Absent prior written consent of the Post-Petition Lender, the Debtor and the Committee shall not be permitted to use the proceeds of the DIP Facility to finance in any way any adversary action, suit, arbitration, proceeding, application, motion, other litigation, examination or investigation of any type relating to or in connection with the Pre-Petition Liens, the Pre-Petition Indebtedness, the DIP Liens, or the DIP Obligations; provided, however, that a maximum amount of $10,000 of proceeds of the DIP Facility may be paid as compensation to professionals retained by the Committee to investigate the amount, validity, enforceability, perfection, and priority of the Pre-Petition Liens and the Pre-Petition Indebtedness.

28.    <u>Right to Request Release</u>.  The Pre-Petition Lender and the Post-Petition Lender reserve the right to request at the Final Hearing that the Debtor release, acquit, and forever discharge the Pre-Petition Lender and Post-Petition Lender and their directors, officers, representatives, agents, and attorneys from any and all claims, counterclaims, demands, controversies, costs, contracts, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, actions, and causes of action of any nature, type or description, whether at law or equity, by common law or statute, in contract, for, or otherwise, known or unknown, asserted or unasserted, or suspected or unsuspected.

29.    <u>Findings of Fact and Conclusions of Law</u>. This Interim Order constitutes, where applicable, findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the execution thereof.

30.    <u>Order Effective</u>. This Interim Order shall be effective as of the date of the signature by the Court.

31.     <u>Controlling Effect of Interim Order</u>. To the extent any provision of this Interim Order conflicts with any provision of the Motion or any of the DIP Financing Documents, the provisions of this Interim Order shall control.

32.     <u>Notice and Final Hearing</u>.  A final hearing on the Motion shall be scheduled for September 20, 2010 at 2:00 p.m. (the "<u>Final Hearing</u>").  A copy of this Interim Order shall be served by the Debtor on (a) counsel for the Pre-Petition Lender and Post-Petition Lender, (b) the U.S. Trustee, (c) counsel for the Committee; (d) the twenty (20) largest unsecured creditors, and (e) any party requesting written notice pursuant to Bankruptcy Rule 2002, within 48 hours of its entry.  Any objection must be filed and served so that it is received by counsel for the Debtor not later than three (3) days prior to the Final Hearing.


SIGNED this _____day of _____, 2010.


_____
**HONORABLE KAREN BROWN**
**UNITED STATES BANKRUPTCY JUDGE**


**APPROVED AS TO SUBSTANCE AND FORM:**


*/s/ Donald L. Wyatt____*
Donald L. Wyatt (SBT #24039262)
Wyatt Legal Services, PLLC
26418 Oak Ridge Rd.
The Woodlands, TX 77380

**ATTORNEY FOR THE DEBTOR**

*/s/ J. Frasher Murphy*
J. Frasher Murphy (SBT #24013214)
Gregory M. Zarin (SBT #24060871)
**WINSTEAD PC**
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Phone (214) 745-5400
Fax (214) 745-5390

**ATTORNEYS FOR COMERICA BANK**


*/s/ Christopher Adams*
Christopher Adams
**OKIN, ADAMS, & KILMER LLP**
1113 Vine St., Suite 201
Houston, Texas  77002
United States of America
Phone (713) 228-4100
Fax (888) 865-2118

**ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**


**APPROVED AS TO FORM ONLY:**


/s/ *Joseph B. Wells*
Ronald E. Gold
Joseph B. Wells
**FROST BROWN TODD LLC**
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
513-651-6800 Telephone
513-651-6981 Facsimile

**COUNSEL FOR CLARKWESTERN
BUILDING SYSTEMS INC.**


Dallas_1\5566229\3
50981-7 8/24/2010