UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
01/24/2011

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 10-35732 |
| ISC Building Materials, Inc., | § § | CHAPTER 11 |
| Debtor | § § | |

ORDER GRANTING
DEBTOR'S MOTION FOR APPROVAL OF SALES AND BIDDING
PROCEDURES PERTAINING TO LOT B ENNIS LUMBER DIVISION ONLY

The Debtor's Motion for Approval of Sales and Bidding Procedures (Doc# ___) came before the Court for consideration together with any objections thereto. The Court has been informed, on the record, that counsel for the Debtor, counsel for the Unsecured Creditors, and Counsel for Comerica Bank have agreed to the entry of this Order as to Bidding and Sales Procedures for Lot B, the Ennis Lumber Division of the company only. After having considered the Motion, Objections, and materials and evidence submitted in support thereof, the Court finds that:

1. The Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. 11 USC 105 provides the court with the authority to enter orders in a case which are necessary and appropriate to carry out the provisions of the Bankruptcy Code. Specifically, here, the court has authority to grant the relief requested in the form requested in order to establish just and proper procedures for the conduct of a Sale of Assets pursuant to either 11 USC 363 or 11 USC 1123.

3. The Sales and Bidding Procedures pertaining to LOT B, the Ennis Lumber DIVISION as proposed by the Debtor are reasonably calculated to subject the sale to competitive market forces and permit interested parties an opportunity to evaluate the

Assets and make an informed bid.

4. The proposed process will help to promote a sale for the highest and best offer by exposing the assets to a broad, diverse and competitive market. The Bidding Procedures will facilitate the process and ensure an orderly process necessary to the generation of the highest and best bids for the assets.

5. It is in the best interests of the Estate, the Debtor, Creditors, and other parties in interest to GRANT Debtor's Motion and Approve of the Sales and Bidding Procedures set forth at length herein.

THEREFORE, The Debtor's Motion to Approve of Sales and Bidding Procedures is granted and the following Procedures are adopted and ordered by the Court:

<u>**"LOT B – Ennis Lumber Yard**</u>
<u>**BIDDING AND SALES PROCEDURES**</u>
<u>**ISC Building Materials, Inc.  10-35732**</u>

The sale of all or substantially all of the assets of ISC Building Materials, Inc., is contemplated to occur imminently under authority granted by the Bankruptcy Court in the matter of ISC Building Materials, Inc., 10-35732 SDTX. The assets of the company have been divided by the Debtor into two distinct Lots.

Lot A is comprised of the Drywall Division of the company. This Lot is comprised of all assets of the company, real personal and mixed excluding all those assets described below as Lot B. Lot B is comprised of the assets associated with the Ennis Lumber Yard Division of the Company, a/k/a Blazek Building Supply. A full description of Lot B is attached hereto and is entitled, "Schedule of Assets." The description of Lot B assets is specific and no assets which are described as being included within Lot B are contained within Lot A. Sale of Lot B is contemplated to occur by way of Sale Order under 11 USC 363.

The Sales contemplated under these procedures are a direct result of the efforts of the Debtor and its advisors, GulfStar Group, II, Ltd. These Bidding and Sales Procedures are intended upon approval to become a part of any Asset Purchase Agreement executed by the Debtor and any potential buyer of Lot B. These procedures are intended to govern the procedures of Bidding and Sale for Lot B.

**Overview of Process.**

The process leading up to these procedures is as follows:

- GulfStar Group, II, Ltd.("GulfStar") was engaged by ISC Building Materials, Inc., to market the assets of the company on a fee basis.
- GulfStar prepared and circulated an anonymous Executive Summary describing the business and executed Non-Disclosure Agreements with interested parties.
- GulfStar distributed a Confidential Memorandum describing the company, its assets and operations to interested parties.
- GulfStar solicited Indications of Interest from buyers desiring to submit bids for the assets.
- GulfStar established a "Data Room" and arranged for management meetings and site visits as requested to facilitate investigation and preliminary due diligence by interested parties.
- GulfStar received and, together with Debtor's counsel, reviewed proposed Term sheets.
- GulfStar circulated proposed forms of Asset Purchase Agreement.

It is contemplated that from and after approval of these Bidding and Sales Procedures:

**Bid Qualification, Deposits and Procedures related thereto:**

1) All bidders must qualify as a bidder in order to submit a bid that Debtor can accept.

   a) An entity that is seeking to become a qualified bidder will deliver a Request to be Deemed a Qualified Bidder together with financial information by 5:00 PM on the second business day before submitting any bid to GulfStar reasonably demonstrating such bidder's ability to consummate a sale on the terms proposed. Such financial information, which may be provided confidentially, if appropriate, may include current audited or verified financial statements of, or verified financial commitments obtained by, the potential bidder (or, if the potential bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach).

   b) If they have not already done so pre-confirmation, to be qualified, a prospective bidder also shall be required contemporaneously to make a non-binding expression of interest and execute a reasonable form of non-disclosure agreement before being provided due diligence access to non-public information.

c) A bidder that wishes to avoid the submission of financial information to GulfStar but wishes to become a Qualified Bidder may do so if it makes a good faith deposit in escrow with GulfStar equal to 100% of the value of its bid. Any such Bidder shall be deemed a qualified bidder for that offer, and any advance over that offer up to 150% of the face amount of its initial bid.

d) Any Bidder that GulfStar finds to have not provided sufficient information to permit GulfStar in the good faith exercise of its sole and exclusive judgment to make a finding of such bidder's ability to consummate a sale on the terms proposed shall be notified by GulfStar of its decision that it is not a qualified bidder within 24 hours of submission of its Request for Qualified Bidder status. Any party aggrieved by such a decision may file a Motion with the Court seeking to be found qualified together with the same information provided to GulfStar with its original submission to GulfStar submitted to the court. The Motion shall request Expedited and Emergency consideration. Unless and until the court enters an order requiring that GulfStar must consider the proposed bidder to be a "Qualified Bidder," bidding may proceed without bids from the aggrieved prospective bidder. Absent a court order to the contrary, Bidding shall commence and continue, and may be concluded, under the Procedures without participation of any aggrieved putative Qualified Bidder. The finding by the court at any time after the close of Bidding that a Bidder could, or should, have been Qualified to Bid shall not be cause to invalidate or otherwise upset the outcome of the Bidding Procedures and the selection of a Winning and/or runner up bid.

2) Each bid submitted must meet the following minimum criteria to be considered by the Debtor and become a qualified bid:

a) Bids shall be submitted on or before the date and time of the Close of Bidding to Seller by submission of a bid package to Bryan C. Frederickson, Managing Director, GulfStar Group, II, Ltd., 700 Louisiana Street, 38th Floor, Houston, TX 77002. GulfStar shall thereafter provide copies of such Bids to counsel for Comerica and counsel for the Committee.

b) Bid packages shall include:

i) As to each Bid, an Asset Purchase Agreement in form substantially similar to the Asset Purchase Agreement(s) filed with the court and made available in the Data Room representing the "Stalking Horse Bid" and shall clearly identify all conditions to the qualified bidder's obligation to consummate the purchase.

ii) Every proposed agreement must contain language that:
(1) makes performance of the agreement by ISC Building Materials, Inc. contingent upon Debtor's acceptance of the offer, and,
(2) acknowledges that the buyer is bound by the terms of the proposed Asset Purchase Agreement until bids have closed and thereafter until released there from by virtue of the acceptance of a different offer, except in the case of a backup bidder. (See Below).

    iii) A document marked against the form of the stalking horse agreement(s), showing amendments and other modifications (including price and other terms) proposed by the qualified bidder. Bidders are informed hereby that a sale of less than all of the assets offered in the Lot is not contemplated and that bids for less than all of those offered assets in the Lot may be rejected irrespective of other terms of the bid.

    iv) A statement confirming under oath that the Bidder has not engaged in any collusion with respect to the bidding or the sale.

    v) A good faith deposit, which will be non-refundable if the bidder is selected as the successful bidder and fails to consummate the purchase (other than as a result of a breach by the seller) and refundable if it is not selected as the successful bidder (other than as a result of its own breach).
  (1) The amount of the deposit shall be no less than 10% of the total cash consideration to be paid by the Bidder for the Lot that the Bidder proposes to acquire.
  (2) Deposits may be tendered ONLY by funds transfer to an escrow account established by GulfStar for these purposes and, in any event, must be made in manner acceptable to GulfStar.

    vi) Bidders who have become "Qualified" by means of the deposit of funds in the amount of 100% of the face value of their initial bid shall be deemed qualified for all bidding purposes up to150% of their initial bid.

    vii) Once a Qualified Bidder has submitted a Bid and made a deposit, no additional deposit may be required of any bidder making an overbid. All escrowed deposits will be held according the terms of the attached "Escrow Agreement."

3) Bids contingent upon financing approval from any third party shall not be accepted.

4) Bids for individual Lots that are made contingent upon the bidder being the successful bidder for any other Lot shall not be accepted.

5) Except as provided in this paragraph, bids that are contingent upon the Bidder obtaining title through purchase, or occupancy rights through lease, of the Real Estate where the Ennis Lumber Division, a/k/a Blazek Building Supply is located will be rejected. All potential Bidders are cautioned that securing continuing occupancy rights in this property, either through purchase or lease, is the responsibility of the Bidder. Reference should be made to SDTX 10-35732, Doc 206-1 for terms of the existing Lease of the premises by the Debtor. Bidders desiring to Bid for Lot B may do so on the condition that the Debtor accept the existing lease agreement and assign its occupancy rights, subject to its obligations and 11 USC 365, to the successful bidder.

6) Credit bids will be accepted from holders of allowed secured claims only and only in the undisputed amount of the secured portion of any such claims. Comerica shall be authorized to exercise any credit bids in the full amount of its claims.

7) The Debtor may, in the reasonable exercise of its judgment, accept and close on the second highest qualified bid(s) received if the winning bidder fails to close the transaction within 10 days of the date that GulfStar announces the winning bid.

8) In order to provide a reasonable incentive to procure stalking horse bids of substantial value, the stalking horse bidder shall have the following additional rights:

   a) In the event that any Stalking Horse Bid is not the highest bid accepted by the Debtor then, and only then, the Stalking Horse Bidder shall be entitled to:

      i) Return of any Good Faith Deposit tendered with the Asset Purchase Agreement.

      ii) Payment by Seller, as an administrative expense, of the actual amount expended by the Stalking Horse Bidder in conducting activities of investigation and due diligence in connection with the presentation of its Bid and Asset Purchase Agreement. PROVIDED, however, that the amount of any such payment shall not exceed $50,000 for Lot "B".

   b) If the Stalking Horse bid(s) is not successful, then the unsuccessful Stalking Horse bidder(s) shall have ten (10) days in which to submit its statement(s) for Break Up Fees to GulfStar (with copy to counsel for the Debtor, counsel for Comerica Bank, and counsel for the Committee) for payment out of Deposit Funds in Escrow only. GulfStar, the Debtor, Comerica Bank, and the Committee shall have 5 days to object to the Stalking Horse Break Up Fee. Any such objection must be made in writing and delivered to GulfStar and the Stalking Horse (with copy to counsel for the Debtor, counsel for Comerica Bank, and counsel for the Committee). If no party timely objects to the Stalking Horse Break Up Fee, GulfStar may pay the Stalking Horse Break Up Fee Request. If a party timely objects to the Stalking Horse Break Up Fee, the Stalking Horse Bidder(s) shall have ten days in which to file a Motion with the Bankruptcy Court for the purpose of determining allowance of the Break Up Fee. Notwithstanding any other provision of this Plan, GulfStar shall retain 100% of the demanded Stalking Horse Break Up Fee in escrow until the allowance of the Fee has been determined by the court. GulfStar shall not be liable to any party for failure to pay any demanded Break up fee except upon a showing of actual malice or bad faith.

9) The initial required minimum overbid for Lot "B" is $100,000. Lot "B" overbids after the initial must be in a minimum amount of $50,000. Bids which fail to exceed the designated overbid minimum for any given lot shall be rejected as not conforming to these rules.

10) The Stalking Horse bidder shall be deemed to have waived any and all break-up fees by rebidding on any lot following the submission by a competing bidder of any greater bid.

11) The Sales procedures identified herein are deemed to be fair, reasonable, and likely to bring about a sale of the subject assets for a price that represents a fair and reasonable value for the assets sold.

12) Absent irregularities in the conduct of the sale, or reasonable and material confusion during the bidding, Debtor will not consider bids made after the sale has been closed and may proceed directly to closing as provided in these Bid Procedures and any confirmed Plan. Any party asserting such an irregularity or confusion shall be deemed to have waived their objections, right to make any further bid, and objection to closing if a Motion seeking to re-open bidding is not filed by 5:00PM on February 7, 2011. Provided that no such Motion is filed, GulfStar shall direct the Escrow Agent to disburse all deposits of unsuccessful bidders except the deposits of the winning bidder and second highest qualified bids, on February 8, 2011.

13) Unless Debtor's Plan of Reorganization filed December 31, 2010 has been sooner Confirmed, Debtor shall file a Motion for a Sale Order and submit each winning bid for consideration by the court as a Sale pursuant to 11 USC 363 no latter than February 8, 2011. Said Motion may go forward on an expedited emergency basis with Notice thereof limited to Debtor, Comerica Bank, the Official Committee of Unsecured Creditors, parties having filed an appearance in the case and having requested Notice of all filings and parties having filed an objection to these Procedures having been provided to interested parties.

14) Debtor shall become bound under the terms of the Asset Purchase Agreement(s) of the winning bidder(s) as and when a Motion for a Sale Order is submitted by Debtor to the court with the Asset Purchase Agreement set forth at length attached thereto and then only if the Court enters a Sale Order in substantially the same form as Debtor's submission.

15) Until and unless Debtor becomes bound under these procedures to the terms of the Asset Purchase Agreement(s) Debtor may elect not to accept the terms of all, but not less than all, of the proposed Asset Purchase Agreements for any reason.

**Bidding and Procedures Related Thereto:**

1) On the earlier of January 24, 2011, or the date which is three business days after the date of approval of these Procedures by the court, Debtor, ISC Building Materials, Inc., will select a Stalking Horse Bidder and GulfStar will collect a Good Faith Deposit and an executed Asset Purchase Agreement with the Bidder(s).

2) One day following Debtor's selection of the Stalking Horse bid, GulfStar will publish the terms of the "Stalking Horse Bid(s)" on the Data Room website.

3) GulfStar will then solicit competing bids.

    a) Each bid which becomes the highest bid on acceptable terms to the Debtor will be posted by GulfStar to the internet Data Room website.
    b) GulfStar will inform the Debtor, through its counsel, Comerica Bank, through its counsel, and the Official Committee of Unsecured Creditors, through its counsel, of each bid received.
    c) Debtor will consult each said representative prior to instructing GulfStar as to whether a bid is acceptable to Debtor. Debtor shall not be bound by the decision or recommendation of either the Committee or Comerica Bank.
    d) Notwithstanding the foregoing, Comerica reserves any and all applicable rights under 11 U.S.C. §363.
    e) Debtor will not refuse to accept any bid that is in substantially the same form as the form of the Stalking Horse Bid.
    f) Debtor will not refuse to accept a bid based on the identity of the bidder as long as each bid is made by a Qualified Bidder under these Procedures.

4) On Friday February 4, 2011 GulfStar will conduct a final round of bidding live at its offices 700 Louisiana, Suite 3800☐Houston, Texas 77002☐T: (713) 300-2020☐F: (713) 300-2021.
    a) Any party wishing to submit a bid must attend in person.
    b) Entities (not natural persons) must be represented by a duly authorized representative who has exhibited credentials, acceptable to GulfStar in its sole and absolute discretion, proving their capacity to bid and bind their principal to an acceptable contract if they represent the winning bidder or the runner up.
    c) Bidding will commence at 9:00AM CST and will close when no further advance is called after three calls for advance, but in no event latter than 11:59 AM CST on February 4, 2011.
    d) GulfStar will appoint a representative to conduct the sale. Any Managing Director of GulfStar may be authorized to conduct the sale.
    e) GulfStar will post each final Bid received from each final Bidder to the Data Room immediately after the close of the sale.

5) GulfStar will inform the successful bidder that it has submitted the winning bid on Friday, February 4, 2011 by 4:00 PM CST. GulfStar will also inform the next runner up that the bid submitted is not the winning bid but is the next runner up and that the bid deposit will remain in escrow and that the bidder must stand ready, willing and able to close the transaction according to the terms of the runner up bid if the winning bidder defaults.

6) Contemporaneously, GulfStar will post of Notice of Winning Bid to the Data Room.

**Closing and Procedures related thereto:**

1) Closing on all non-real property shall be scheduled by Debtor and the successful winning bidder(s) for no later than the 10th day after Debtor becomes bound by the Asset Purchase Agreement(s).

2) As to each closing hereunder, the successful bidders shall tender all cash consideration required under the terms of the accepted Asset Purchase Agreement(s) at or before closing for deposit in the Escrow Account established by GulfStar for such purposes. This shall be the same account into which bid deposits have been deposited.

3) Unless otherwise stated in the Asset Purchase Agreement, Closing on all non-real assets shall occur at the Debtor's business offices located at 1400 W. Commerce Street, Dallas, Texas.

4) All liens, claims (as that term is defined in Section 101(5) of the Bankruptcy Code), interests, encumbrances, and other interests shall attach to the proceeds from the sale of the Debtor's assets with the same validity, priority, force and effect that they now have as against such assets.

5) Counsel for the Debtor shall prepare a Settlement Statement in commercially reasonable form for the non-real assets closing(s) showing the date and time of closing and a schedule of proposed disbursements to Class 1, 2, 3, and as applicable, Class 4 and 5 claimants and submit same to the Court no less than 48 hours prior to closing with notice to counsel for Comerica Bank and Counsel for the Unsecured Creditor's Committee. Unless any party in interest objects to the Settlement Statement, or Schedule of Proposed Disbursements, by filing a written objection thereto with the court prior to 9:00 AM on the date set for closing, Counsel for the Debtor shall be authorized to direct disbursement of funds from the GulfStar Escrow Account as specified in said schedules.

   a) Any Objection filed must be supported by an Affidavit showing facts that demonstrate clearly that the proposed Settlement Statement and/or Schedule of Disbursements is incorrect in some material regard.

   b) The Objection shall request expedited and emergency hearing from the court. Any order issued by the court thereon shall be deemed authority for the parties to proceed to closing forthwith upon the terms established by the court.

   c) Failure of any notified party in interest to file an objection shall be deemed consent to proceed to closing and disbursement as provided in the filed Statement and Schedule.

   d) The Schedule may provide for the retention of Sale proceeds to the extent reasonably necessary to provide for any adjustment to the sales price based upon

post closing audit and confirmation of inventory levels, or, any amounts reasonably necessary to pay closing costs and administrative expenses directly associated with closing the Sale."

Further, all sales activity respecting the Ennis Lumber Division, whether pursuant to 11 USC 363, or 11 USC 1123, shall be conducted under these approved procedures. No sale is approved hereby. All sales shall be subject to further proceeding before this court.

Dated: 1-24-11

KAREN BROWN

UNITED STATES BANKRUPTCY JUDGE

Approved as to Form and Substance:


**WINSTEAD PC**

By: /s/ Frasher Murphy
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2199
(214) 745-5400
(214) 745-5390 (Facsimile)
J. Frasher Murphy - SBT# 24013214
**ATTORNEYS FOR COMERICA BANK**

Wyatt Legal Services, PLLC

By:   /s/   Don Wyatt
Donald L. Wyatt, Jr. SBT#24039262
26418 Oakridge Drive
The Woodlands, Texas 77380
Telephone: (281) 419-8733
Facsimile: (281) 419-8703
**ATTORNEYS FOR THE DEBTOR,**
**ISC Building Materials, Inc.**

Okin, Adams and Kilmer, PC


By:  Chris Adams
Christopher Adams
Texas Bar No. 24009857
Email: cadams@oakllp.com
1113 Vine St. Suite 201
Houston, TX 77002
Tel: (713) 228-4100
Fax: (888) 865-2118
**COUNSEL FOR THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS**