IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ISC Building Materials, Inc. | ) | Case No. 10-35732 |
| A Texas Close Corporation, | ) | (Chapter 11) |
| | ) | |
| Debtor. | ) | |
| | ) | |

---

**SECOND AMENDED PLAN OF REORGANIZATION**
**PROPOSED BY THE DEBTOR**
**(February 9, 2011)**

---

Pursuant to Section 1121(a) of Title 11, United States Code, and Fed.R.Bankr.P. 3016, the Debtor, ISC Building Materials, Inc., ("ISC"), and the Official Committee of Unsecured Creditors ("UCC") (collectively, "Plan Proponent") hereby proposes the following Plan of Reorganization (the "Plan").

## ARTICLE I
### Definitions

Unless otherwise provided in this Plan, all terms used herein that are defined in the Bankruptcy Code shall have the meaning assigned to such terms in the Bankruptcy Code. For purposes of this Plan, the following words or terms shall have the meanings set forth below and such meanings shall be equally applicable to both the singular and plural forms of the word or term defined:

1.1. "*Adjudicated Claim*" shall mean a claim, whether arising pre-petition or as the result of the cancellation or revocation of an equity security interest in the debtor and which has not, as of the Effective Date of the plan, been fully liquidated and reduced to judgment by a court of final and competent jurisdiction.

1.2. "*Administrative Claim*" shall mean any cost or expense of administration in this Chapter 11 case allowed under Section 503(b) of the Bankruptcy Code, including any and all allowances of compensation or reimbursement of expenses, and any fees or charges assessed against the ISC estate, to the extent allowed by the Bankruptcy Court under the Bankruptcy Code.

1.3. "*Allowed Claim*" means a Claim: (i) in respect to which a proof of claim has been timely filed with the Bankruptcy Court against ISC within the applicable period of

limitation fixed by Bankruptcy Rule 3003(c)(3), or (ii) scheduled in the list of creditors prepared and filed with the Bankruptcy Court by ISC pursuant to Bankruptcy Rules 1007 and 3003 and not listed as disputed, contingent or unliquidated, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation pursuant to Bankruptcy Rule 3007 or an order of the Bankruptcy Court, or as to which any such objection has been determined by a Final Order.

1.4.  "*Allowed Equity Interest*" shall mean an equity interest (i) in respect to which a proof of equity security interest has been timely filed with the Bankruptcy Court in respect of ISC within the applicable period of limitation fixed by Bankruptcy Rule 3003(c)(3), or (ii) scheduled in the list of equity security holders prepared and filed with the Bankruptcy Court by ISC pursuant to Bankruptcy Rules 1007(a)(3) and 3003, in either case as to which no objection to the allowance thereof has been interposed, or as to which any such objection has been determined by a Final Order.

1.5.  "*Allowed Secured Claim*" shall mean an Allowed Claim secured by a lien, security interest or other charge or encumbrance against the interest or property in which ISC has an interest, which lien, security interest or other charge or encumbrance is valid, perfected and enforceable, under applicable law, and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, to the extent of the value, determined in accordance with Section 506 of the Bankruptcy Code, of the interest of the holder of such Claim, and ISC's interest in such Property.

1.6.  "*Allowed Unsecured Claim*" shall mean an unsecured, non-priority Allowed Claim against ISC.

1.7.  "*Bankruptcy Code*" shall mean Title 11 of the United States Code.

1.8.  "*Bankruptcy Court*" shall mean the United States Bankruptcy Court for the Southern District of Texas.

1.9.  "*Burns Family Group*" shall mean Allan Burns of Dallas, Texas, together with such other of his wife, and all of his children, and any entity owned in its entirety by him, his wife and or children, as he may designate to be members of the Burns Family Group.

1.10. "*Claim*" shall mean a claim against ISC as defined in 11 U.S.C. § 101(5).

1.11. "*Class 4 Cash Down Payment*" shall mean a sum of money to be paid under the terms of this plan to the holders of Allowed Class 4 claims at the time of the Final Real Estate Closing hereunder.  This sum shall be no less than Three Hundred Thirty Six Thousand Dollars ($336,000.00)

1.12. "*Closing Date*" shall mean:

1.12.1. In the event that the Selected Reorganization Alternative is a Sale of the Drywall Division, the last date established in the Bidding and Sales Procedures – Drywall Division upon which the non Real Estate assets of the Debtor are scheduled to be transferred to the successful bidder.

1.12.2. In the event that the Liquidity Transaction is a Family Reorganization Proposal, March 1, 2011.

1.13. "*Confirmation Date*" shall mean the date upon which the Bankruptcy Court enters the Confirmation Order.

1.14. "*Confirmation Order*" shall mean a Final Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.15. "*Contemplated Liquidity Transaction*" means a transaction, or series of transactions that produce Liquidity necessary to fund this Plan or Reorganization.

1.16. "*Creditor*" shall mean any person, group or entity that is a holder of a Claim against ISC.

1.17. "*Disputed Claim*" shall mean any Claim that is not an Allowed Claim.

1.18. "*Drywall Division*" shall mean all assets of the Debtor excluding only, but all of, those assets that comprise the Ennis Lumber Division.

1.19. "*Effective Date*" shall mean that date eleven (11) days after entry of the Confirmation Order.

1.20. "*Ennis Lumber Division*" shall mean only those assets that are identified on the Schedule of Assets – Ennis Lumber Yard attached to the Debtor's Bidding and Sales Procedures – Ennis Lumber Yard, SDTX 10-35732 Doc#280-2.

1.21. "*Family Reorganization Proposal*" shall mean a proposal submitted by a member of the Burns Family Group pursuant to which the Burns Family Group proposes to contribute funds, property or both in order to support a reorganization of the debt of the company, retain partial or complete ownership of the Drywall Division assets, and pay Class 4 creditors a portion of their allowed claims as of the Final Real Estate Closing date and a portion of their allowed claims in the Form of Unsecured Claim Bonds. Any such Proposal that is accepted by the Unsecured Creditors Committee under the Reorganization Selection Procedures shall become the "Family Reorganization Plan."

1.22. "*Final Real Estate Closing Date*" shall mean the latest to occur of all Real Estate Closing dates under this plan.

1.23. "*General Unsecured Claims*" shall mean all Allowed Claims arising on or before the Petition Date that are not Administrative Claims, Tax Claims or Secured Claims.

1.24. "*ISC*" shall mean ISC Building Materials, Inc., a Texas Close Corporation which is the Debtor in the above-referenced Chapter 11 reorganization proceeding.

1.25. "*ISCBM Post Confirmation Trust*" shall mean that certain liquidating Trust established by virtue of the Confirmation of this Plan of Reorganization under the Laws of the State of Texas according to the terms of the attached Exhibit "A".

1.26. "*Liquidity Transaction*" shall mean any transaction or set of transactions in which the assets of the Debtor are pledged, sold or transferred and which event produces sufficient net liquidity to the Estate of the Debtor that the claims of Class 1, 2 and 3 creditors can be paid in full. The Transaction(s) may be comprised of either a Sale of Lot A, the Drywall Division, or by way of a Family Reorganization Proposal. The Transaction(s) may be subject to closing in several parts as the needs of the chosen method of disposition are accommodated under the terms of this Plan. In no event shall a Liquidity Transaction result in a Closing Date, beyond March 1, 2011, or a Real Estate Closing Date, which is beyond March 15, 2011.

1.27. "*NOL Benefit Party*" shall mean any person or entity that would be a proper party to acquire equity interests in the Reorganized Debtor under this Plan and whose participation would not, thereby, cause the loss of any benefit of Net Operating Losses available to the Debtor prior to the Confirmation Date.

1.28. "*Petition Date*" shall mean July 6, 2010, the date on which ISC filed its petition under Chapter 11 of the Bankruptcy Code.

1.29. "*Plan*" shall mean this Plan of Reorganization proposed by ISC either in its present form or as it may be altered, amended or modified from time to time in accordance with the Bankruptcy Code and Rules.

1.30. "*Positive Litigation Dividend*" shall mean a positive recovery, net of all costs, fees, expenses and Success Fees, payable to the Trustee of the ISCBM Post Confirmation Trust as proceeds of successful litigation of a Post Confirmation Collection Case.

1.31. "*Post Confirmation Collection Case*" shall mean all chose in action held by Debtor on the confirmation date, whether incorporated into pending litigation, or wholly unprosecuted. It shall include any pending proceeding in which Debtor is a party plaintiff or a party defendant with pled or un-pled counterclaims or cross claims. This definition shall include cases and causes in action for collection of Accounts Receivables that are being actively litigated in any court of competent jurisdiction on the effective date of the plan but shall not include any other right to collect accounts receivable from customers of the Debtor.

1.32. "*Real Estate Closing Date*" shall mean any date and time established pursuant to an order approving a Sale of Assets by the Debtor, or under the terms of any Asset Purchase Agreement executed by Debtor pursuant to the authority granted hereunder, or on which any loan transaction contemplated within a Family Reorganization Plan which involves the transfer and or pledge of real estate as security to fund a Liquidity Transaction is set to close, but in no event later than March 31, 2011.

1.33. "*Reorganization Alternative*" shall mean that method of creating liquidity that results from the selection by the Official Committee of Unsecured Creditors of either a Family Reorganization Proposal or a Sale of Assets under the Bidding and Sales Procedures – Drywall Division.

1.34. "*Selected Reorganization Alternative*" shall mean the choice made between a Sale of the Drywall Division or the Family Reorganization Proposal as determined by the Official Committee of Unsecured Creditors.

1.35. "*Unsecured Claim Bond*" shall mean a written evidence of debt issued by the Reorganized Debtor payable to holders of allowed Class 4 claims in any given amount or proportion according to the terms of a final bid under a Family Reorganization Plan.

1.36. "*WLSPLLC*" shall mean ISC's counsel, Wyatt Legal Services, PLLC.

**ARTICLE II**
**Classification of Claims and Equity Security Interests**

A claim is in a particular Class only to the extent that the Claim qualifies within the description of that Class and is in a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

2.1     Class 1 - Class 1 shall consist of creditors holding allowed Administrative Claims for administrative expenses pursuant to 11 U.S.C. §503(b) and shall include all payments due to the United States Trustee.  This Class includes, but is not limited to, post-petition expenses of ISC, including unpaid taxes and amounts owed to, WLSPLLC for its services as ISC's counsel in this Chapter 11 case, the claims of Chris Williams, GulfStar Group, II, Ltd., for services as ISC's CRA which are approved by the Bankruptcy Court, and claims of any other professional persons whose retention and fee request(s) have been approved and allowed by the Bankruptcy Court.  In addition, this class includes all payments due by the reorganized debtor to the United States Trustee on account of quarterly fees payable prior to closure of this case.

2.2     Class 2 - Class 2 shall consist of creditors holding Allowed Claims of governmental units incurred pre-petition and entitled to priority under 11 U.S.C. § 507(a)(8).

2.3     Class 3 - Class 3 shall consist of the holders of Allowed Secured Claims, if any, including those of Comerica Bank.

–5–

2.4     Class 4 - Class 4 shall consist of the holders of all other Allowed Claims, except Class 5 claims, whether having arisen prior to commencement or as the result of any cancellation, or rejection of any executory contracts.

2.4     Class 5 – Class 5 shall consist of all equity security holders of the Debtor on the Date of Confirmation of this plan.

## ARTICLE III
## Treatment of Claims and Equity Security Interests Not Impaired Under the Plan

3.1     Class 1 (Section 503(b)(1) Allowed Administrative Claims).  Unless a holder agrees to less favorable treatment, the holders of Allowed Administrative Claims shall receive on account of such Claims cash in the full amount of such Claims and expenses in accordance with the ordinary business terms of payment of such Class 1 Claims or, if already beyond the ordinary business terms of any particular Class 1 Claim, then on the Effective Date, upon the Closing Date, or Real Estate Closing Date, of so many of the Liquidity Transactions as are necessary to pay these claims in full.  Notwithstanding the foregoing, to the extent that fees have been approved and not paid prior to final fee applications being submitted and approved, professionals employed at the expense of the estate and entities who may be entitled to allowance of fees and expenses from the estate pursuant to Sections 503(b)(2)-(6) of the Bankruptcy Code, shall receive cash in the amount awarded to such professionals and entities by the Order of the Bankruptcy Court no later than, and as soon as practicable after, the latter of the Effective Date or the date on which an Order approving of said fees enters.  Holders of Class 1 claims may continue to submit fee statements as per the terms of any pre-confirmation administrative orders governing allowance of fees.  Fees provisionally or finally allowed pursuant to any such administrative orders may be paid in due course post confirmation, or out of any closing held under this plan, as and when allowed pursuant to those pre-confirmation orders and the terms of this Plan.  The fees of counsel for the Debtor, and counsel for the Official Committee of Unsecured Creditors reflected on Monthly fee notices to which no objection has been filed pursuant to said administrative orders and filed with the court prior to the date of the Confirmation Order on this Plan shall be deemed finally allowed as of the Effective Date of the Plan.  Fees sought by Professionals incurred or invoiced for any period not previously filed with the court prior to the date of the Confirmation Order on the Plan shall remain subject to approval of the court according to the terms of said pre-confirmation administrative orders.  Orders entered by the court on Motions allowing claims under 11 USC 503(b) shall be treated as final determinations of Class 1 status as to the allowed amount of the 503(b) claims.  The Class 1 claims are being treated consistent with 11 U.S.C. §1129(a), and are not impaired under the plan.

3.2     Class 2 (Section 507(a)(8) Allowed Governmental Unit Claims).  Unless a holder agrees to less favorable treatment, Allowed Claims of governmental units, shall be paid in full within 30 days of the effective date of the Plan.  Until paid in full, holders of Class 2 claims shall be entitled to a continuing lien on the assets of the estate to the same extent as that to which they were entitled prior to the commencement date of this Chapter Proceeding.  To the extent

that the holder of a Class 2 claim is secured, any conveyance or transfer of assets under this Plan that are encumbered by such a security interest in any Contemplated Liquidity Transaction shall result in payment, out of closing, of the amount of any such secured claim.  The Class 2 Claims are being treated consistent with 11 U.S.C. §1129(a), and are not impaired by the Plan.

### Treatment of Claims and Equity Security Interests Impaired Under the Plan

3.3     Class 3.  (Allowed Secured Claims of Comerica Bank).  Unless the holder agrees to a less favorable treatment, the Allowed Secured Claims of Comerica Bank shall be paid indefeasibly in full in cash out of closing on the Contemplated Liquidity Transactions within this Plan, with such indefeasible payment in full being in accordance with the Bank's rights under the Bankruptcy Code, and orders entered by the Court in this Bankruptcy case.  The Class 3 Claims are entitled under the Post Petition DIP Loan to payment on or before the effective date of the Plan and, therefore, are impaired by the Plan and entitled to vote on the Plan.

3.4     Class 4 (Unsecured Claims).  Unless the holders agree to less favorable treatment, the Class 4 Claims shall be paid a pro-rata share of the remaining proceeds of the Contemplated Liquidity Transaction up to the full allowed amount of each claim.  In the event that the Contemplated Liquidity Transaction takes the form of a Sale of the Drywall Division of the corporation, then Payment shall be made on the date of the Final Real Estate Closing Date by payment of net proceeds after retirement of claims held by Classes 1, 2 and 3 directly to the Trustee of the ISCBM Post Confirmation Trust for distribution under the terms of that trust.  In the event that the Contemplated Liquidity Transaction takes the form of a Family Reorganization Plan, then payment of any Class 4 Cash Down Payment as called for within the Family Reorganization Plan shall be made in cash at the time of the Final Real Estate Closing Date and issuance of any Unsecured Claim Bonds shall occur simultaneously with the Real Estate Closing Date.  Provided, however, that in the case that there are any Disputed Claims which are, or may be, classified under this Class 4, Debtor shall retain in Escrow a sum sufficient to pay the cash portion of any such claim if it is Allowed in full for distribution under the terms of this Plan once the claim is allowed, if at all.  The recovery by Class 4 creditors is anticipated to be less than 100% and the holders of Class 4 claims are impaired by the Plan and entitled to vote on the plan.

3.5     Class 5 (Equity).  Unless the holders agree to less favorable treatment, and, if the Contemplated Liquidity Transaction is a Family Reorganization Plan, except as provided in any binding Family Reorganization, all shares of stock in Class 5 are to be cancelled under the terms of this plan.  In the event that any of the contemplated assets sales hereunder yields a net recovery in excess of all amounts necessary to pay the Allowed amount of all Class 4 claims and above, then all such excess proceeds shall be distributed to Class 5 Equity members.  Class 5 is impaired and entitled to vote on the plan.

### ARTICLE IV
### Means for Executing the Plan

–7–

This Plan will be executed by the creation of a Liquidity Transaction sufficient to fund the payment of Class 1, 2, and 3 claims in full and the partial or full payment of Class 4 and 5 claims in that order. The Liquidity Transactions will be created by selection of a Reorganization Alternative and will proceed according to the Attached Bidding and Sales Procedures – Drywall Division, Family Reorganization Proposal Procedures, and Reorganization Selection Procedures. At the conclusion of these procedures, the Debtor will execute all documents and take all actions necessary to effectuate the intent of the Reorganization Alternative that has been selected by the Unsecured Creditors Committee.

If the Contemplated Liquidity Transaction is a Sale of the Drywall Division, then following closing(s) of the Contemplated Liquidity Transactions, all undistributed proceeds of closing, and all remaining assets of the Reorganized Debtor, if any, shall be transferred and committed to the Trustee of the ISCBM Post Confirmation Trust for administration and distribution according to the terms of the Trust. Upon such final distribution, the Estate of the Debtor shall be deemed fully administered and this Plan fully performed.

If the Contemplated Liquidity Transaction is a Family Reorganization Plan, then payment shall made to Class 4 claim holders of the Class 4 Cash Down Payment and all Unsecured Claim Bonds will be issued at the time of the Final Real Estate Closing. In such an event, then only those funds, Post Confirmation Collection Cases, Chapter Five Causes of Action and other properties committed to administration by the Trustee of the ISCBM Post Confirmation Trust by the terms of the Family Reorganization Plan shall be transferred to the Trustee thereof. If nothing is so transferred, then the Trust shall never come into being and shall be a nullity.

It is contemplated by this Plan that as of the Effective Date of the Plan the LOT B Bidding and Sales Procedures have resulted in an Asset Purchase Agreement, Sales order, and/or closing which have liquidated the value of the Ennis Lumber Division of the corporation. If, for any reason: (A) the Lot "B" Bidding and Sales Procedures Order has not been entered by the court; (B) a Sale Order approving of the Asset Purchase Agreement resulting from those Procedures has not been entered; OR (C) the closing under the Sale Order has not yet occurred, then Confirmation of this Plan shall constitute the Grant and Entry of those orders without further action by the court and the Asset Purchase Agreement for Lot "B" shall be performed by the Debtor and all other interested parties forthwith.

All assets thus sold and assigned under this Plan will be transferred free and clear of all rights, claims, liens, encumbrances and other interests of any claimant from the beginning of time to the moment of sale. The sales are contemplated to be at going concern value and, accordingly, the Debtor shall continue in possession of the assets as of the Confirmation Date as Reorganized Debtor but subject to all claims, rights, and duties as set forth in this plan including the eventual distribution of all proceeds thereof to holders of Allowed Claims and Interests under this Plan. The Debtor shall continue to operate in accord with the terms of the Pre Confirmation DIP facility as specified in Doc #165 until closing hereunder.

**Corporate Governance.**

–8–

The Sole Director of the Debtor, Allan Burns, shall remain as Director of the Corporation until the case is closed.  Brent Burns shall serve as President and Treasurer of the Corporation until the case is closed.

The reorganized debtor shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6) up to the date of the funding of the ISCBM Post Confirmation Trust.  Any fees due as of the date of confirmation of the plan will be paid in full on the effective date of the plan.  After confirmation, the reorganized debtor shall pay United States Trustee quarterly fees as they accrue until this case is closed by the Court.  The debtor shall file with the Court and serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) that the case remains open in a format prescribed by the United States Trustee until the Trustee of the ISCBM Post Confirmation Trust takes up that duty as required in the Trust.  Fees not paid, or not invoiced to the Debtor, as of the date on which final disbursement is made to the Trustee of the ISCBM Post Confirmation Trust shall be payable only by the Trustee of said Trust.

## ARTICLE V
## Executory Contracts

5.1     Executory Contracts and Unexpired Leases.  All executory contracts and unexpired leases of real or personal property not specifically by way of written notice previously assumed by ISC shall be deemed rejected as of the Effective Date.

5.2     Rejection Claims.  Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to the Plan must be incorporated into a Proof of Claim that is filed within ten (10) days after the Effective Date.  Any rejection claims not filed within said period shall be deemed barred.  Nothing herein shall extend the deadline to file a Proof of Claim for rejection of any executory contract or unexpired lease occurring on or prior to the Effective Date.

## ARTICLE VI
## Resolution of Disputed Claims and Collections

6.1     Filing Objections to Claims. Unless otherwise ordered by the Bankruptcy Court, objections to the allowance of any Claims and Interest shall be filed with the Bankruptcy Court and served upon the holders of such Claims to which objections are made no later than forty five (45) days after the Effective Date.

6.2     Settlement of Claim Objections After Effective Date.  After the Effective Date, but before the date of the last closing resulting from the Liquidity Transaction(s) chosen under this plan, ISC, by a 2/3 vote of its Board of Directors, may settle any Claim without notice and hearing and without order of the Bankruptcy Court. If the selected Reorganization Alternative is a Sale of the Drywall Division, after final distribution by the Reorganized Debtor has been made to the Trustee of ISCBM Post Confirmation Trust, settlement and administration

of claims shall be made exclusively by the Trustee thereof and Debtor shall be relieved of all duties related thereto.

6.3    Settlement of Post Confirmation Collection Cases.  In the event that the Contemplated Liquidity Transaction is a Sale of the Drywall Division, from and after the Effective Date of the Plan and the establishment and transfer of funds and claims to the Trustee of the ISCBM Post Confirmation Trust, the Trustee of that Trust acting in accord with the terms of the Trust Document may settle and compromise any and all litigation over which the Trust has control of the chose in action represented therein without notice to creditors or permission of the court.

6.4    Chapter 5 Causes of Action.  All Chapter 5 causes of action, if any, are preserved under this Plan and, in the event that the Reorganization Alternative is not a Family Reorganization Plan transferred to the Trustee of the ISCBM Post Confirmation Trust for administration pursuant to the Terms of the Trust Agreement.  In the event that the Reorganization Alternative is a Family Reorganization Plan then said Plan will control disposition of Chapter 5 Causes of Action.

## ARTICLE VII
## Acceptance or Rejection of the Plan

7.1    Voting Classes.  The holders of Claims in Classes 3, 4 and 5 are impaired and shall be entitled to accept or reject the Plan.

7.2    Presumed Acceptance/Rejection of Plan.  The holders of Claims in Classes 1, and 2 are unimpaired under the Plan and therefore are conclusively presumed to accept the Plan.

7.3    Impaired Classes to Vote.  Except as otherwise required by the Bankruptcy Code or the Bankruptcy Court, each holder of a Claim that is impaired under the Plan is entitled to vote to accept or reject the Plan if, as of the date of voting, its Claim is an Allowed Claim, or the Claim has been temporarily allowed for voting purposes only by order of the Bankruptcy Court pursuant to Bankruptcy Rule 3018(a).

7.4    Acceptance by Class of Holders of Claims.  A Class of holders of claims shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Classes that have voted to accept or reject the Plan.

7.5    Cram down.  In the event that any impaired Class of Claims is entitled to vote shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, ISC requests that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code and ISC reserves the right to modify the Plan to the extent, if any, that confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires or permits such

modification.  ISC will request that the Bankruptcy Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code as fair and equitable as to any Class which rejects or is deemed to reject the Plan and otherwise meets all standards under 11 USC 1129(b) for confirmation.

## ARTICLE VIII
### Modification of the Plan

8.1    The Plan Proponent may modify the Plan at any time before Confirmation, but may not modify the Plan so that the Plan, as modified, fails to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code.

8.2    The Plan Proponent may modify the Plan any time after Confirmation or before substantial consummation of the Plan, but may not modify the Plan so that the Plan, as modified, fails to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code.  If the Plan is modified under this subsection, it becomes a Plan only if the Bankruptcy Court, after notice and hearing, confirms the Plan, as modified, under Section 1129 of the Bankruptcy Code and circumstances warrant such modification.

## ARTICLE IX
### Retention and Scope of Jurisdiction

The Bankruptcy Court shall retain and have exclusive jurisdiction of all matters arising out of and related to, the Chapter 11 case and the Plan pursuant to and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, but not limited to, the following purposes:

A.    To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

B.    To hear and determine any and all motions, applications, adversary proceedings, and contested or litigated matters that may be pending on and/or after the Effective Date which are authorized by, arising under or related to this reorganization case under the Bankruptcy Code;

C.    To insure that distributions to holders of Allowed Claims and Allowed Interests are accomplished as provided herein;

D.    To hear and determine any objections to Administrative Claims or to proofs of claim or interest filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow or disallow any Disputed Claim or Interest in whole or in part;

E.    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

       F.      To issue such orders in aid of the execution of the Plan, to the extent authorized by Section 1122 of the Bankruptcy Code;

       G.      To consider and act on the compromise and settlement of any Claim against or cause of action by or against ISC's estate to the extent necessary;

       H.      To consider any modification of the Plan, to cure any defect, or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including without limitation, the Confirmation Order and to hear and determine the amount of any claim to be allowed following a default event hereunder;

       I.      To hear and determine all applications for compensation and reimbursement of expenses of professional persons incurred prior to the Effective Date or, if applicable hereunder, after the effective date;

       J.      To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan,

       K.      To recover all assets, claims and causes of action of ISC and property of the ISC estate;

       L.      To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

       M.      To hear any other matter not inconsistent with the Bankruptcy Code;

       N.      To hear and determine all matters authorized by, and in relation to, the ISCBM Post Confirmation Trust and its administration;

       and

       O.      To enter a Final Decree closing the Chapter 11 case.

### ARTICLE X
### Miscellaneous Provisions

       10.1    Successors and Assigns.  Except as otherwise provided herein, the rights and duties and obligations of any person named or referred to in this Plan shall be binding upon and shall inure to the benefit of the successors and assigns of such person.

       10.2    Applicable Law.  Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan are to be governed by the laws of the State of Texas.

10.3    Headings.  The headings of the articles and the paragraphs of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

10.4    Revocation of Plan.  The Plan Proponent, reserves the right unilaterally and unconditionally to revoke, end, or withdraw the Plan at any time prior to the entry of the Confirmation Order and upon such revocation, end or withdrawal, the Plan shall be deemed null and void and of no force and effect.

10.5    Discharge.  In the event that the Selected Reorganization Alternative is a Sale of the Drywall Division then this is a liquidating plan and the Debtor will not receive a discharge under the Bankruptcy Code.  However, all assets of the Debtor having been disposed of under the terms of this Plan, no holder of an allowed claim may assume any reasonable chance of satisfaction of claims other than under the terms of this Plan.  In the event that the Selected Reorganization Alternative is a Family Reorganization Plan, then this is not a liquidating plan and the Debtor will receive a discharge of all debts and obligations to any holder thereof with or without notice of this Chapter proceeding under the Bankruptcy Code except those obligations created by, through or under this Plan of Reorganization.

10.6    Automatic Effect.  By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of directors or stockholders of the Debtor under the Plan, including, without limitation, (i) the distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, deeds, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for within or under the Plan involving the company or organizational structure of the Debtor, shall be deemed to have Occurred and Shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation, limited liability, or partnership law of the state of Texas without any requirement of further action by the directors and stockholders of the Debtor.

10.7    Non-voting securities prohibited.  Effective upon the Effective Date, each of the Debtor's formation documents shall each be deemed amended to prohibit the issuance by the Debtor of nonvoting securities to the extent required under section l123(a)(6) of the Bankruptcy Code.

10.8    Dissolution of Committee.  On the 60th day after the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role from or relating to the Chapter 11 Case.  Nothing herein shall prohibit or limit the ability of Committee Professionals (or Debtor's Professionals) to represent the Trustee of the ISCBM Post Confirmation Trust or to be compensated or reimbursed per the Plan and the Liquidating Trust Agreement in connection with such representation of the Trust.

10.9   <u>Waiver of Ten (10) Day Stay</u>. Debtor requests as part of the Confirmation Order a waiver from the Bankruptcy Court of the ten (10) day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the ten (10) day stay of Bankruptcy Rule 6004(g).

10.10  <u>Withholding</u>.  All Distributions to Holders of Allowed Claims under the Plan are subject to any applicable withholding, including employment tax withholding. The Debtor and/or the ISCBM Post Confirmation Trust will withhold appropriate employment taxes with respect to payments made to a Holder of an Allowed Claim that constitutes a payment for compensation.  Payors of interest, dividends, and certain other reportable payments are generally required to withhold thirty percent (30%) of such payments if the payee fails to furnish such payee's correct taxpayer identification number (social security number or employer identification number), to the payor. The Debtor or Trust may be required to withhold a portion of any payments made to a Holder of an Allowed Claim if the Holder (a) fails to furnish the correct social security number or other taxpayer identification number  ("TIN") of such Holder, (b) furnishes an incorrect TIN, (c) has failed to properly to report interest or dividends to the IRS in the past, or (d) under certain circumstances, fails to provide a certified statement signed under penalty of perjury, that the TIN provided is the correct number and that such Holder is not subject to backup Withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

10.11 <u>State Tax Authorities</u>.  In resolution of the objections of the State Law Taxing Authorities, and notwithstanding any other provision of this plan, the secured ad valorem tax claims of these State Law Taxing Authorities shall be paid in full, including interest under 11 USC 506(b) on their pre-petition tax claims, at their statutory rate of 12% per annum. Furthermore, the State Law Taxing Authorities shall retain all liens they currently hold, whether for pre-petition tax years or for the current tax year, on any property of the debtors until they receive payment in full of all taxes, and interest owed to them under the provisions of this Plan, and their lien position shall not be diminished or primed by any Exit Financing approved by the Court in conjunction with the confirmation of this Plan.  Ad valorem taxes for the 2011 tax year are to be timely paid in the ordinary course without the necessity of the filing of administrative expense claims or requests for payment, and if not so timely paid, will be subject to state court collection procedures without the necessity of further recourse to the Bankruptcy Court.

10.12 <u>Designation of Initial Trustee by Unsecured Creditors Committee</u>:  The Trustee of the ISCBM Post Confirmation Trust, if one is established as provided herein, shall initially be designated by the Official Committee of Unsecured Creditors within 5 days of the date on which a winning bidder for the Drywall Division is announced.


Dated: _____.


**ISC Building Materials, Inc.**

–14–

By:__/s/_____
        Allan Burns, President


Wyatt Legal Services, PLLC


By:__/s/_____
    Donald L. Wyatt, Jr.
    26418 Oakridge Drive
    The Woodlands, Texas 77380
    Telephone:  (281) 419-8733
    Facsimile:  (281) 419-8703

ATTORNEYS FOR THE DEBTOR,
        ISC Building Materials, Inc.