IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ISC Building Materials, Inc. | ) | Case No. 10-35732 |
| A Texas Close Corporation, | ) | (Chapter 11) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S EMERGENCY MOTION TO AMEND BIDDING AND SALES PROCEDURES
REGARDING SALE OF DEBTOR'S DRYWALL ASSETS**

COMES NOW, ISC Building Materials, Inc. (the "Debtor"), by and through its attorneys, Wyatt Legal Services, PLLC, by Donald L. Wyatt, Jr., and respectfully moves (the "Motion") for an order amending the Bidding and Sales Procedures (the "Drywall Bid Procedures") regarding the sale of the Debtor's Drywall Assets (the "Drywall Assets"), and would respectfully show as follows:

## I.  FACTUAL BACKGROUND

1. The Debtor commenced this bankruptcy case by filing a voluntary bankruptcy petition under chapter 11 of the Bankruptcy Code.

2. The United States Trustee created the Official Committee of Unsecured Creditors (the "Committee") on July 14, 2010.  The Committee is represented by Christopher Adams of Okin, Adams and Kilmer, PC.

3. On September 8, 2010, the Court approved the employment of Gulfstar Group, II, Ltd. ("Gulfstar") (Doc #155) for the purposes of marketing and selling a recapitalization program or other sale of Debtor's assets.  Since that date, Gulfstar has been working with the Debtor to arrange for the competitive sale of Debtor's assets and is prepared to conduct a sale (auction) of the Drywall Assets on February 17, 2011.

95007865.1                                                         1

4. Gulfstar's efforts encompassed the following:

a. 9/19/2010  Gulfstar approved by the Court to be employed by the Debtor;

b. 9/19 – 10/20/2010  Gulfstar drafted the Confidential Information Memorandum ("CIM"), prepared multi-year project model, compiled list of prospective buyers; 130 total (89 private equity groups, 41 corporations), drafted anonymous executive summary (the "Teaser") under the title "Project Build;"

c. 10/18/2010  Distributed Teaser to prospective buyers;

d. 10/18 – 10/29/2010  Executed confidentiality agreements and sent CIM to interested parties;

e. 10/19 – 10/29/2010  Follow-up calls and emails to all executive summary recipients;

f. 11/4/2010  Distributed letters to parties receiving CIM outlining process for submitting an initial indication of interest ("IOI");

g. 11/19/2010  IOIs received (2 for full company, 1 for drywall division only, 2 for lumber division only);

h. 11/22/2010  Opened online data room to parties submitting indications of interest;

i. 11/29 – 12/15/2010 Management meetings and site visits;

j. 12/11/2010  Draft purchase agreement sent to parties submitting IOIs for full company or Drywall Assets;

k. 12/20/2010  Draft purchase agreement sent to parties submitting indications of interest for lumber division only.

5. On February 14, 2011, the Bankruptcy Court entered its order (the "Confirmation Order") confirming the Debtor's Second Amended Plan of Reorganization (the "Second

Amended Plan"), dated February 9, 2011. Attached as Exhibit A to the Second Amended Plan were the Drywall Bidding Procedures.

6. Since the entry of the Confirmation Order, the Debtor has negotiated, and subsequently approved, an asset purchase agreement (the "Stalking Horse APA") with Marjam, Inc., who will serve as the stalking horse bidder ("Marjam," or the "Stalking Horse") in conjunction with the upcoming February 17, 2011 auction of the Drywall Assets.

## II. ARGUMENT

7. The terms of the Stalking Horse APA differ in certain respects from the Drywall Bidding Procedures approved by this Court as Exhibit A to the Second Amended Plan. This Bid represents the highest and best offer for the assets to date. Marjam and the Debtor have agreed that Marjam will not be bound by its offer unless the Bid procedures are amended as specified herein. If the amendments are not approved, Marjam has represented that its bid for the assets will be $1,000,000 less.

8. Therefore, the Debtor requests that the Court enter an order, substantially in the form annexed hereto as Exhibit B, amending the Drywall Bidding Procedures such that, to the extent that the Drywall Bidding Procedures conflict with the terms of the Stalking Horse APA, the terms of the Stalking Horse APA control.

9. The Stalking Horse APA represents the product of arms-length negotiations in good faith between the Debtor and Marjam. The Debtor drafted the Drywall Bidding Procedures prior to any negotiations with Marjam regarding the Drywall Assets, and thus did not have an opportunity to discuss certain procedures with Marjam prior to filing those procedures with the Court. Now that the parties have fully negotiated the Stalking Horse APA, certain changes to the

Drywall Bidding Procedures are necessary to ensure that the Debtor complies with the various terms of the Stalking Horse APA.

10. For example, despite the parties' best efforts, the Debtor was unable to select Marjam, Inc. as the Stalking Horse Bidder until February 15, 2011, after the February 11, 2011 deadline referenced in the Drywall Bidding Procedures. Additionally, as part of Stalking Horse APA, the parties have agreed to allow Marjam the ability to collect its Expense Reimbursement and Stalking Horse Breakup Fee (as those terms are defined in the Stalking Horse APA), if Marjam was not the successful bidder at the auction, even if Marjam rebid on the Drywall Assets following an initial overbid. Because there are other differences in the Drywall Bidding Procedures and the Stalking Horse APA which may impact potential bidders, in an effort to provide the Court and prospective bidders with the clearest procedures as possible, attached as Exhibit A is a schedule setting forth the totality of provisions of the Drywall Bidding Procedures that conflict with, and therefore are replaced by, the terms of the Stalking Horse APA.

11. Moreover, the Stalking Horse APA is expressly conditioned on the implementation of these procedures by this Court. If approved by the Court, the Debtor will publish these modifications immediately and forward same to all interested parties.

12. The modifications contemplated hereunder do not negatively affect the rights of any claimants in this matter and are sought in furtherance of the proper and effective implementation of the Plan. F.R.B.P. 3020.

### III. PRAYER

WHEREFORE, the Debtor requests the entry of an order, substantially in the form attached hereto as Exhibit B, amending the Drywall Bidding Procedures such that, to the extent that the Drywall Bidding Procedures conflict with the terms of the Stalking Horse APA, the

terms of the Stalking Horse APA control; and grant the Debtor such other and further relief, both at law and in equity, to which the Debtor is justly entitled.

Dated: February 15, 2011

        Wyatt Legal Services, PLLC

        */s/ Don Wyatt*
        Donald L. Wyatt, Jr. SBT # 24039262
        26418 Oakridge Drive
        The Woodlands, Texas 77380
        (281) 419-8733

        *Counsel for ISC Building Materials, Inc.*